### Melchior Leipold, Appellant, v. Elbert Epler, Appellee.

#### (Not to be reported in full.)

Appeal from the Circuit Court of Edwards county; the Hon. WIL-
LIAM H. GREEN, Judge, presiding. Heard in this court at the March
term, 1915. Affirmed. Opinion filed December 1, 1915. Rehearing
denied April 5, 1916.

### Statement of the Case.

Action by Melchior Leipold, plaintiff, against El-
bert Epler, defendant, in the Circuit Court of Edwards
county, to recover on a contract contained in a deed
whereby defendant was alleged to have assumed the
payment of certain mortgages.  From a judgment for
defendant, plaintiff appeals.

It appeared that plaintiff was the owner of land
situated near the Saline River in Saline county, Illi-
nois, upon which there were three mortgages, one for
the amount of $4,000, one for $3,000 and one for $8,000,
for which plaintiff was liable, either by having exe-
cuted the notes secured by the mortgages, or by having
assumed the payment thereof.

On May 17, 1913, plaintiff sold and conveyed the
land to the defendant for a nominal consideration of
$25,550, and conveyed it to defendant by warranty
deed.  The deed making the conveyance contained the
following statement: "The covenants of warranty in
this deed contained are made subject to the mortgages

on said land  *  *  *; and the accumulated interest on each of the above, which the grantee herein assumes and agrees to pay.''

The sale of this land was effected by one Gould, a cousin of defendant. Defendant's testimony tended to show that Gould was acting as the agent of plaintiff in the consummation of this deal, and that he received a commission therefor, while the testimony of the plaintiff and Gould was that Gould did not at any time act as such agent. It further appeared that upon the first efforts of Gould to trade with defendant he was unable to consummate a deal, and that he thereupon entered into a partnership with defendant for the purpose of purchasing this land. The testimony showed that defendant reposed great confidence in Gould, both in his integrity and judgment, and after the arrangement was made defendant left the matter entirely to Gould, and did not even go to see the land. Gould represented that it was a fine piece of corn land; that four hundred acres of it was in a high state of cultivation; that three hundred acres had the stumps taken out; that it overflowed only in times of very high water; that there were no sloughs in it; that the Saline River ran into it just enough to drain it good; that the improvements were good; that it always grew good corn and was worth $50 an acre; and that the plaintiff paid $50 an acre for it. Gould closed the deal with plaintiff, but there was no evidence of any agreement having been made to assume the mortgages previous to the making of the deed, when plaintiff inserted therein the clause assuming said mortgages, and Gould then sent the deed to defendant who retained it and did not record it for the reason, as he said, that Gould was his partner and that his name was not in the deed as grantee. Gould then informed the defendant that a man named Turrentine desired to purchase the land, and that it could be traded to him for $30,000 by tak-

ing some property in Kansas City and other places, and that Gould said he knew the property and that it was good, and Gould also said to defendant: "The deed is made to you, I admit that, but I will have a half interest in the land and rather than make another deed, you go ahead and do it as it was and I expect to get part of the property you were trading for."

It further appeared that a deal between Gould and Turrentine was consummated upon the judgment of Gould, and on the next day after this deal had been closed and the deed made, the deed from plaintiff to defendant was recorded. It further appeared that the property taken from Turrentine was of no value, and that the property secured by plaintiff from defendant, in addition to the assuming of the said mortgages, was of the value of about $4,800, and that the Saline county land was of an inferior quality, not in a good state of cultivation, and worth very much less than it had been represented.

It further appeared from the evidence that a year or so from the time of the making of the deed by plaintiff to defendant that some of the principal and interest became due upon the mortgages referred to in the deed, and were not paid by the defendant, so plaintiff proceeded to pay off one principal note and several interest notes, amounting in all to about $2,780.

The declaration consisted of several special counts and the common counts, but each and all of them are based upon the foregoing clause assuming the mortgages as set forth in the deed made by the plaintiff to defendant.

Defendant filed the plea of general issue, to which he attached a notice of special matters in defense: First, denying that the deed containing such clause was ever accepted by him, or that he assumed and agreed to pay the mortgages; second, that the transaction through which the deed containing the clause was obtained and had been effected through the fraud

and circumvention of Gould, as agent of the plaintiff, and that the deed was fraudulently made to defendant, and that because of the fraud connected with the sale the contract sued on was void; and third, that the defendant never did receive any consideration for assuming and agreeing to pay plaintiff's indebtedness in the declaration mentioned.

HOWARD P. FRENCH, E. B. GREEN and J. M. CAMPBELL, for appellant.

H. J. STRAWN, ALLEN E. WALKER and P. C. WALTERS, for appellee.

MR. JUSTICE MCBRIDE delivered the opinion of the court.

## Abstract of the Decision.

1. CONTRACTS, § 5*—*what constitutes collateral agreement.* A contract to assume an incumbrance on land purchased is not one of the essential parts of a deed of conveyance, and is in fact extraneous and collateral to it.

2. MORTGAGES, § 227*—*when grantee not bound by recital in deed to pay existing incumbrances.* A recital in a deed that the grantee assumes and agrees to pay existing incumbrances on the property conveyed is not, in and of itself, sufficient to fix the liability to pay without proof that such grantee assented to the clause recited.

3. ESTOPPEL, § 21*—*when grantee not estopped by recital of deed.* A grantee is not estopped by the recital of a deed which he does not execute.

4. DEEDS, § 29*—*when undertaking in deed not enforceable.* An undertaking by a grantee recited in a deed is collateral to it, and if the promise fail or be shown to have been the result of fraud or mistake, the undertaking will not be enforced.

5. MORTGAGES, § 228*—*when fraud defense to agreement to assume incumbrances.* Where there is a recital in a deed that the grantee assumes and agrees to pay certain mortgages on the property conveyed and the grantee discovers fraud in the transaction, he is not limited to recoupment or to returning the property and suing for a return of the consideration, but may make use of the fraud to defeat an action by the grantor for breach of the contract.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

6. CONTRACTS, § 1*—*what constitutes simple contract.* An undertaking of a grantee recited in a deed to assume and pay incumbrances on the property purchased is a simple contract.

7. CONTRACTS, § 7*—*when fraud a defense.* Fraud is a good defense to an action on a simple contract.

8. VENDOR AND PURCHASER, § 35*—*when fraud fatal to title.* Fraud practiced by the party seeking the remedy upon him against whom it is sought, and not that which is the subject-matter of the action or claim, is fatal to his title.

9. PRINCIPAL AND AGENT, § 155*—*when principal may not receive benefit of unauthorized act of agent.* A principal cannot receive the benefit of unauthorized acts of his agent which are in fact fraudulent.

10. PRINCIPAL AND AGENT, § 131*—*when principal liable for benefits due to unauthorized acts of agent.* A principal who has actually received the benefit of money procured by the unauthorized acts of his agent will be liable in the amount he has received the benefit of.

11. FRAUD, § 115*—*when evidence sufficient to sustain finding that agreement by grantee to assume mortgages was fraudulently procured.* In an action by a grantor to recover for breach of an agreement recited in a deed whereby the grantee assumed certain mortgages on the property conveyed, where the defense to the action was fraud and where the evidence was conflicting, evidence examined and *held* that a finding by the jury that the agreement was procured by a fraudulent scheme concocted by the grantor and his agent was not manifestly wrong.

12. MORTGAGES, § 226*—*when evidence sufficient to sustain finding that grantee did not intentionally assent to agreement to assume incumbrances.* In an action by a grantor to recover for breach of an agreement recited in a deed whereby the grantee assumed certain mortgages on the property conveyed, evidence examined and *held* to warrant the jury in finding that defendant never knowingly and intentionally assented to the contract recited.

13. FRAUD, § 133*—*when instructions on fraud as defense to contract not erroneous.* Instructions framed on the theory that the presence of actionable fraud inducing damage to any extent is a complete defense to an action on a simple contract are not erroneous.

14. INSTRUCTIONS, § 118*—*when instruction on effect of fraudulent representations by agent of vendor in procuring agreement to assume incumbrances not erroneous.* In an action to recover for breach of an agreement recited in a deed whereby the grantee assumed certain mortgages on the property conveyed, where the defense was that the agreement was procured by a fraudulent scheme concocted by plaintiff and his agent, an instruction relative to the effect of the fraudulent representations of plaintiff's agent in pursuance of the scheme

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

is not erroneous although there is no direct evidence that plaintiff had anything to do with that portion of the scheme to which the representations related, if there is evidence that plaintiff and his agent were co-operating generally in the transaction by which plaintiff was defrauded.

Boggs, J., dissenting.