## Emily A. Pfeffer, Appellee, v. Farmers State Bank of Schaumburg, Appellant.

### Gen. No. 35,257.

362

Opin-ion filed November 9, 1931.

Roos & Boeger and Church, Haft, Robertson & Crowe, for appellant.

Wetten, Pegler & Dale, for appellee.

Mr. Justice Matchett delivered the opinion of the court.

This appeal is by defendant from a judgment in the sum of $5,211 entered upon the finding of the court in an action in the case.

The original declaration named as defendants the bank and its cashier, W. C. Kreft. Upon trial the court found both defendants guilty, whereupon plaintiff dismissed the cause as to Kreft and filed an amended declaration charging the bank alone. To this the defendant bank filed a plea of the general issue and a special plea setting up the statute of limitations. Plaintiff demurred to the special plea, and the court sustained the demurrer. Propositions of law were submitted by the parties and the court made a finding and entered judgment as heretofore stated.

The principal contention of defendant is that the court erred in sustaining plaintiff's demurrer to the plea of the statute of limitations.

There is no dispute as to the facts. On May 22, 1924, plaintiff purchased a store with dwelling rooms in Schaumburg, Illinois. The property was incumbered by a trust deed made to secure an indebtedness of $7,000 which had been placed thereon by a former owner. This incumbrance had been passed on to successive purchasers who from time to time took title. The trust deed, the notes, the insurance policy, etc., were in the possession of the defendant bank which made the original loan and its renewals.

In her purchase of the premises plaintiff was represented by her agent, Robert McNair. On the day following her purchase, May 23, 1924, McNair went to defendant bank to get the insurance policy for the pur-

pose of taking it to an officer of the insurance company in order that the consent of the insurance company for the assignment of the policy to plaintiff might be executed. He found Kreft in sole charge of the bank. Kreft told McNair he would not let the insurance policy go out of the bank but said he would take care of getting the consent of the insurance company to the assignment. A week later McNair again called at the bank and again found Kreft in sole charge and asked if the consent to the assignment had been executed. Kreft told him it had been executed and showed him the policy bearing the purported signature of the secretary of the insurance company signed in proper form. Kreft then returned the policy to the vault of the bank where it remained for several months.

September 17, 1924, the building in question was totally destroyed by fire resulting in a loss of more than $12,000. Proof of loss was served on Pfingsten, secretary of the insurance company. The company denied liability on the ground that the consent to the assignment had not been signed by its secretary. Plaintiff sued the insurance company, and the case was twice tried. She was unable to make out a prima facie case because the proof showed that the consent of the insurance company to the assignment had not been in fact executed by an officer of the insurance company and that as a matter of fact the name of the secretary of the insurance company was signed thereto by Kreft without authority.

The insurance policy was issued March 22, 1920, and it was in the possession of the bank for several years. While the papers were in the possession of the bank Kreft signed the name of Pfingsten to the mortgage clause on the face of the policy, and May 5, 1923, he signed Pfingsten's name to a form of consent to the assignment of the insurance policy from one Hoffman to Jordan and a year later signed Pfingsten's name to

the consent requested by plaintiff. Besides being secretary of the insurance company, Pfingsten was a director of the defendant bank and a member of its finance and auditing committees; during the year 1923 he was vice president.

Defendant says the amended declaration states a new cause of action; that the original declaration charged both defendants with joint negligence, while the amended declaration charges negligence against the bank alone upon the theory of *respondeat superior*. Defendant cites cases which recognize the difference in the nature of such classes of actions. Defendant says that if Kreft was not guilty then the bank could not be guilty. If Kreft was guilty, then the bank, if found guilty, would have a right of action over against ·him, while in cases of joint negligence one joint tortfeasor is not liable over in an action by the other feasors. Defendant states that the books are full of authorities where each of several defendants is charged with separate acts which, it is alleged, combined to bring about the injury complained of, and that in such cases the courts have quite uniformly held that if any of the acts complained of would in itself be sufficient to have caused the injury, then a recovery may be had against the defendant whose act in itself was the cause of the injury, even though it appears from the evidence that the other defendants are not guilty, in consequence of which they are so found and dismissed out of the case. In such case, defendant argues, a sufficient cause of action is alleged in the declaration in each instance against each of the several defendants, and that consequently the amendment of the declaration so as to charge one defendant alone with the act complained of against him in the original declaration, does not state a new cause of action because a sufficient cause of action was stated against him in the first pleading. Such, it is said, is not the case here. No individual

acts of the two defendants, Farmers State Bank of Schaumburg and Kreft, are charged in the declaration, but a single act is charged and they are together alleged to have performed that single act. In other words, defendant relies upon the distinction between concurrent and joint negligence pointed out in many of the cases. *Cleveland, C., C. & St. L. Ry. Co. v. Eggmann,* 71 Ill. App. 42; *St. Louis, B. & S. Co. v. Hopkins,* 100 Ill. App. 567; *Anderson v. West Chicago St. R. Co.,* 200 Ill. 329; *Hayes v. Chicago Telephone Co.,* 218 Ill. 414; *Buck v. Rosenthal,* 273 Ill. 184, with other cases, are cited.

The precise question has been presented and the contrary held in *Skala v. Lehon,* 343 Ill. 602, after a careful review of the authorities. It appeared in that case that the plaintiff filed suit against three defendants, charging negligence on their part in the operation of an automobile owned and operated by them, by reason of which a collision occurred with the automobile in which the plaintiff was riding. A declaration of six counts was filed. The cause came on for trial, and after the evidence was heard the suit was dismissed as to two of the defendants. There was then filed an amended declaration of two counts, one of which charged the remaining defendant liable upon the doctrine of *respondeat superior.* As here, to this amended declaration defendant filed a general issue and a, plea of the statute of limitations, to which the court sustained a demurrer, and there was a verdict for plaintiff with judgment thereon.

The opinion of the Supreme Court states that the only issue involved is whether the trial court erred in sustaining the demurrer to the plea of the statute of limitations, the amended declaration having been filed more than two years after the date of the injury, and that the correctness of the ruling of the trial court depended on whether the declaration charging negligence

of defendant by his agent was a different cause of action from the original declaration charging negligence against the three defendants. It was there argued by defendant that a master or servant could not be jointly charged as tort-feasors, and that since the original declaration charged the three defendants as joint tort-feasors and the amended declaration charged one alone as liable on the doctrine of *respondeat superior,* the causes of action were not the same. The court states that the question had not theretofore been squarely presented to the court, but after reviewing many authorities from different jurisdictions says:

"It may not be perceived, then, in the case at bar, that the cause of action against Lehon in the original declaration is a different cause of action from that presented in the amended declaration. Even though it appear on proof that Briner, who was named as joint tort-feasor with Lehon and who committed the injury, was the servant of Lehon, the liability of Lehon is none the less proved as charged by the allegations of ultimate fact in the declaration. An amendment to meet such proof does not amount to a different cause of action against Lehon but is the same cause of action. The amended declaration charges the same act against Lehon through his agent or servant acting within the scope of his employment and states no different cause of action from that in the original declaration, which makes no reference to such relationship. We conclude that the rule announced in the cases last cited not only represents the weight of authority in this country but is based upon sound reason."

Defendant in its reply brief states with reference to this case that ". . . the Supreme Court inadvertently overlooked the exception to the rule, prevailing where a master and servant were sued jointly for the act of the servant for which it was sought to hold the master upon the principle of *respondeat superior.*"

And adds: "As your Honors will note none of the cases cited by us are referred to in the opinion in the *Skala* case. They were all overlooked by both court and counsel."

Where a decision of the Supreme Court is squarely in point, as is this, it is for this court to follow the rule as announced by our highest judicial tribunal, leaving to that court itself any corrections it may deem necessary. Moreover, the rule as announced in this decision seems now to be the law by virtue of the amendment to section 39 of the Practice Act enacted in 1921 (see Cahill's Ill. St. ch. 110, ¶ 39, and *Zister v. Pollack,* 262 Ill. App. 170). Defendant in its reply brief argues that this amendment is void as violating section 13 of article 4 of the Constitution of 1870 because the subject of the amendment is not expressed in the title of the amendatory act nor is the amendatory matter germane to the original matter contained in said section 39. Many cases are cited which it will be unnecessary to review. Obviously, that question cannot be successfully raised in this court. We hold the trial court did not err in sustaining the demurrer.

Defendant next contends that if there is any liability it is that of Kreft alone. It points out the evidence (which is not contradicted) to the effect that the dealings of McNair, plaintiff's agent, with reference to the insurance policy were altogether with Kreft; that Kreft alone had physical possession of the documents; that he said he would personally attend to the matter of getting the consent of the insurance company, and that he personally put the purported signature of Pfingsten, the secretary of the insurance company, on the policy. Defendant points out that the court held as a matter of law that there was no necessity for taking the insurance policy from the bank in order to procure the written consent of the insurance company, and that if it appeared from the evidence that plaintiff

or her agent dealt with Kreft personally, defendant should be held not guilty; further, that as a mixed question of law and of fact the court held in substance that in signing the name of Pfingsten to the assignment, Kreft was not acting as the agent of defendant. Hence, defendant argues, the undertaking was entirely personal to Kreft and that the acts in connection therewith in no sense were those of the defendant bank; that Kreft says that he acted with the honest belief that he had authority to sign Pfingsten's name and that he was the agent of plaintiff and not the agent of the defendant bank in the transaction. *Moores v. Citizens' Nat. Bank*, 111 U. S. 156, and *Jemison v. Citizens Savings Bank*, 9 L. R. A. (Texas) 708, are cited as applicable.

We have not been convinced by the arguments or the citations. There is not a scintilla of evidence in the record from which the court could have reasonably found that Kreft had any personal interest in this transaction. He was the cashier of the bank and at times had sole charge of its affairs. He, personally, had no interest in the mortgage. The bank did have such an interest in it. Kreft's possession of the papers was the possession of the bank, not his individually. That the cashier of a bank is the general agent for the transaction of the business of the bank has been held in numerous well-considered cases. (*Squires v. First Nat. Bank*, 59 Ill. App. 134; *First Nat. Bank v. Seass*, 158 Ill. App. 122; *Hansel v. First Nat. Bank*, 158 Ill. App. 127; *Ryan v. Dunlap*, 17 Ill. 40.)

Moreover, in this case the by-laws of defendant bank are in evidence, one of which in substance provides that the cashier shall insure the interest the bank may have in any building or property liable to loss by fire and windstorm and protect its interest in all tax sales or foreclosures. Kreft was therefore the sole officer of the defendant bank clothed by general law and by-laws of the bank with authority to transact such business

as was committed to the bank by plaintiff's agent. Indeed, so far as this record indicates, the bank functioned through Kreft alone. The bank had a substantial interest in the property. It had held that interest through many years and under successive owners. The transaction with plaintiff was for the bank, not Kreft individually. It is true, as defendant contends, that Kreft was not authorized by the bank to forge Pfingsten's name to the consent. Few torts of that kind by servants are ever authorized. A corporation is not usually organized for the purpose of committing torts. Nevertheless, in a proper case a corporation is liable for the torts of its servants and employees if the same are committed by them while acting within the scope of authorized business. The false representations here were torts of that character, and for such representations of Kreft the bank is in this case liable.

Defendant next contends that the consent of the insurance company to the assignment of the insurance contract was not necessary in order to protect plaintiff's interest. This contention is based on the well known rule that a contract of insurance is construed most strongly in favor of the insured. Defendant cites *Budelman v. American Ins. Co.,* 297 Ill. 222; *American Smelting & Refining Co. v. Bunker Hill & Sullivan Min. & Con. Co.,* 248 Fed. 172, with many other cases. It is, we think, wholly unnecessary to review these cases. Not one of them holds (and we doubt whether a case can be found in the books holding) that in a case like this an insurance company would be bound unless it gave consent to the assignment. This policy expressly provides that the insurance company shall not be bound without its consent. (See 16 Am. & Eng. Ency. of Law, 843; 2 Cooley's Briefs on Insurance, 1765; 26 Corp. Jur. 130.)

Defendant makes the further point that as the supposed consent of the assignment to plaintiff's vendor,

one Jordan, was also made by Kreft and was unauthorized and therefore invalid, Jordan had no interest to assign to plaintiff and that defendant is therefore not liable. This contention, we think, can hardly be urged seriously. Irrespective of the fact that plaintiff's vendor did not have a valid interest, the consent, if it had been obtained, would have created a new and valid contract between plaintiff and the insurance company which would have given her full protection. (*East St. Louis Lumber Co. v. United States Branch of London Assur. Corp.*, 246 Ill. App. 574; 14 R. C. L. 1007, 1429.)

It is next urged that the court erred in refusing to hold as requested that Pfingsten ratified the act of Kreft in signing Pfingsten's name to the consent. Kreft testified in substance that the morning after the fire he told Pfingsten that he had placed his name on the assignment and asked him whether it was all right; that Pfingsten replied in a casual way, "I guess so." He also testified that at a meeting of the board of directors of the bank held after the fire, Pfingsten said that Jordan, plaintiff's vendor, had not paid his assessment. From this evidence, it is argued that Pfingsten ratified Kreft's act in signing his name and that the insurance company is liable to plaintiff. When the conversation between Pfingsten and Kreft took place the loss had already been incurred and the rights of the parties fixed, and Pfingsten could not at that time by such a casual conversation place on the insurance company the liability to pay a loss for which it was not liable. Action by the board of directors, at least, would have been necessary to bring about that result.

Defendant's next point is stated to be: "The acts complained of are ultra vires the defendant bank, and for that reason, among others, the bank is not liable." Most torts, we observe, are ultra vires corporations, but a principal is liable to third persons for frauds, deceits, misrepresentations, torts, negligence, and other

malfeasances or misfeasances and omissions of duty, by an agent in the course of his employment, although the principal did not participate in or know of the particular wrong. Indeed, the principal would in some cases be liable even if he had disapproved of or forbidden the act. (*Gallagher v. Singer Sewing Machine Co.*, 177 Ill. App. 198; *Moir v. Hopkins*, 16 Ill. 313; *Keedy v. Howe*, 72 Ill. 133; *Chicago City Ry. Co. v. McMahon*, 103 Ill. 485; *Faber-Musser Co. v. Dee Clay Co.*, 291 Ill. 240, 242.)

It is further contended that the acts of Kreft did not constitute either fraud or fraudulent representations for the reason that Kreft, as it is said, believed that he had authority to sign Pfingsten's name and that at the most it can only be said that he made an honest mistake in judgment. *Murphy v. Murphy*, 189 Ill. 360; *Grubb v. Milan*, 249 Ill. 456; *Keithley v. Mutual Life Ins. Co.*, 271 Ill. 584, and many other decisions from the Supreme and Appellate Courts of this State are cited. These decisions hold in effect that to constitute fraud in law a representation must be the affirmance of a fact and not a mere promise or an intention. Such cases are not applicable to the facts here. It will be remembered that plaintiff's agent returned a week after receiving defendant's promise to obtain the consent, and at that time defendant, through Kreft, showed the consent to him apparently properly executed and told him that it had been so executed. Such was not the fact. Defendant, through its cashier, knew the representation was not true. It was made with the intention to deceive, and it did deceive. Plaintiff relied upon it and was damaged through such reliance. If this is not fraud, it is very difficult to understand what would be.

Defendant again says that plaintiff has not been damaged; that the record shows that she could sue again and recover. We have already disposed of this contention. Plaintiff has twice sued and failed, and the

record does not disclose a request by defendant to assist her in maintaining the suit or in establishing the liability of the insurance company.

Finally, defendant contends that the court erred in allowing plaintiff to recover interest and cites section 2, chapter 74 of the revised statute, Cahill's St. ch. 74, ¶ 2; that defendant has defended this suit in the utmost good faith, and that it is not guilty of vexatious delay of payment. We do not think the trial court allowed interest upon that theory. While this action is in form in tort, the damages disclosed are liquidated and easily ascertainable. For that reason the interest was properly allowed. (*Schwitters v. Springer,* 236 Ill. 271; *Laughlin v. Hopkinson,* 292 Ill. 80; *Genslinger v. New Illinois Athletic Club,* 252 Ill. App. 298.)

The judgment of the trial court is affirmed.

*Affirmed.*

O'Connor, P. J., and McSurely, J., concur.