Joseph E. Wassell, Jr., and Effie M. Wassell, Appellees,
v. Pullman Trust and Savings Bank and Charles
H. Brandt, Appellants.

Gen. No. 36,648.

MATCHETT, P. J., dissenting.

Opinion filed November 6, 1933. Rehearing denied November 20, 1933.

MICHAEL KOCH, for appellants; FRANCIS J. KOCH,
of counsel.

HENRY F. ANTES and KELLAM FOSTER, for appellees.

MR. JUSTICE O'CONNOR delivered the opinion of the
court.

Plaintiffs brought an action against defendants to
recover $400, their contention being that they had
given their check for this amount, payable to the order
of the county collector, to a concern engaged in secur-
ing tax reductions on real estate, to pay on account
of the tax levied against their land, but that the con-
cern, without authority, used the check to pay a part
of the taxes on defendants' land. There was a trial
before the court without a jury, finding and judgment
in plaintiffs' favor for $400, and defendants appeal.

There is substantially no dispute as to the facts,
most of them having been stipulated, and so far as it

is necessary to state them here they are as follows: Plaintiffs owned two lots on West Division street, which is in the northwest part of Chicago; defendants owned a lot near 111th street, on the south side of Chicago, on which the taxes were unpaid. About September 21, 1931, plaintiffs employed the National Tax Appraisals, Inc., to endeavor to procure a reduction of the taxes for 1929 on plaintiffs' property. It seems to have been the practice in such cases that part payment of the taxes should first be made, and on September 21, 1931, plaintiffs obtained a cashier's check for $400, payable to the order of the county collector, and delivered it to the Appraisals concern to pay on account of the 1929 taxes on plaintiffs' property. About the same time defendants also employed the Appraisals concern for the purpose of having the taxes reduced on their property, and two months thereafter, November 21, 1931, drew and delivered their check to the order of the Appraisals concern for $400 to be used by the Appraisals concern in part payment of defendants' taxes. Two days thereafter, November 23, 1931, defendants received from the Appraisals concern a receipt from the county collector showing that $400 had been paid by them on account of the 1929 taxes on defendants' property. Defendants' $400 check appears to have been indorsed by the Appraisals concern and paid through the Chicago Clearing House November 24, 1931, and we think it appears without doubt (although some argument is indulged in by counsel for defendants to the contrary) that plaintiffs' check for $400 was turned over to the county collector in part payment of the taxes on defendants' property. There is no contention that defendants knew anything of this fact until this suit was brought. No part of the taxes for 1929 on plaintiffs' property was paid.

Plaintiffs' position seems to be that defendants were benefited to the extent of $400 by the application of plaintiffs' money to the payment of the tax on defend-

ants' property, and that the law will raise an implied promise that defendants will reimburse plaintiffs to that extent. In support of this plaintiffs say that when the Appraisals concern turned over plaintiffs' check for $400 to the county collector to be applied in part payment of defendants' taxes, the Appraisals company was acting as defendants' agent. On this point counsel for plaintiffs in their brief say: ''The National Tax Appraisals, while in the discharge of their duties as agent for defendants, misappropriated the check of plaintiffs and applied it in payment on account of the taxes on defendants' property. Defendants being responsible for the acts of their agent, cannot retain any benefit that they derived from the unauthorized acts of their agent, but are liable to the plaintiffs for the amount of which they have received the benefit.''

The undisputed evidence is that the Appraisals concern was employed separately by plaintiffs and defendants to obtain reduction of taxes on their respective properties. Obviously the Appraisals concern was the agent of both parties. Just when it ceased to be plaintiffs' agent and became solely the agent of defendants, counsel in no way point out; nor is there any suggestion on this point, and we think none can be made because it is obvious that the Appraisals concern was the agent of both plaintiffs and defendants and violated its duty to both. When it used plaintiffs' $400 check to pay part of defendants' taxes it was violating its duty toward plaintiffs and, by the same act, was violating defendants' instruction, which was to pay defendants' taxes with its $400 check. If the defendants were bound by the acts of their agent, the Appraisals concern, as plaintiffs contend, plaintiffs were equally bound because the Appraisals concern was their agent also.

In this court both parties seem to assume that the Appraisals concern, or its officials, have absconded with defendants' $400, or at least that any claim made

against it by plaintiffs or defendants would be of no value, so that either plaintiffs or defendants are out of pocket $400. In this connection plaintiffs seek to invoke the doctrine that where one of two innocent persons must suffer loss because of fraud or wrongdoing by another, the loss should be borne by the one who put it in the power of the wrongdoer to commit the wrong. And they say since plaintiffs' check was made payable to the order of the county collector, while defendants' check was made payable to the Appraisals concern, the defendants should be held liable. The difficulty with this contention is that while plaintiffs' check was made payable to the county collector there was no notation upon it that the $400 should be applied on account of taxes on any particular piece of property. Furthermore, in addition to this negligence or oversight on plaintiffs' part, there is the further fact that plaintiffs' check was given to the Appraisals concern September 21, 1931, while defendants' check was not given until two months thereafter, November 21, 1931, and defendants promptly received their receipted tax bill showing payment of $400 two days afterwards. We are unable to say that defendants' failure to make their check payable to the county collector enabled the Appraisals concern to perpetrate the wrong or fraud any more than plaintiffs' conduct in failing to specify the property on which the $400 was to be applied, and in failing for two months to ascertain whether the $400 had been paid to the county collector.

One cannot voluntarily make himself a creditor of another. *City of Chicago v. Chicago & N. W. Ry. Co.,* 186 Ill. 300. If plaintiffs' money was used to pay part of defendants' taxes, which unquestionably was without defendants' knowledge or consent, plaintiffs cannot recover the amount thus paid.

The judgment of the municipal court of Chicago is reversed.

*Judgment reversed.*

McSurely, J., concurs.

Matchett, P. J., dissents.

### Dissenting Opinion.

I cannot agree with the conclusion reached in this case by a majority of the court, or with the reasoning upon which it is based.

The facts are not complicated. The National Tax Appraisals, Inc., was engaged in the business of making tax adjustments. Plaintiffs employed the Appraisals company to adjust and pay their taxes for the year 1929, and to that end bought a cashier's check made *to the order of the county collector* and forwarded the same to the Appraisals company. Defendants likewise employed the Appraisals company to adjust their taxes for the same year and forwarded a check drawn *to the order of the Appraisals company.*

So far as the evidence discloses these contracts were separate and distinct. Plaintiffs did not know of defendants' contract with the Appraisals company, and defendants did not know of plaintiffs' contract in that respect.

As a result of these contracts, the Appraisals company became the special agent of plaintiffs to adjust and pay their taxes. It also became the special agent of defendants to adjust and pay their taxes. There was no general agency. The Appraisals company was not the agent of plaintiffs while it was paying defendants' taxes, nor was it the agent of defendants while adjusting and paying plaintiffs' taxes. The evidence shows without contradiction that the Appraisals company took the cashier's draft sent by plaintiffs and applied it to the payment of defendants' taxes.

Under circumstances such as these I think it should be held that the special agent of defendants having with knowledge taken a check which was the property of plaintiffs and applied the same in liquidation of an obligation of defendants, defendants were thereby enriched at the expense of plaintiffs and obtained that which in equity and good conscience they have no right to retain. I think the judgment should have been for plaintiffs upon that theory. *Leipold v. Epler,* 198 Ill. App. 618; *Peterson v. Smith,* 211 Ill. App. 431; *Chase & Son v. Willman Mercantile Co.,* 63 Mo. App. 482; *Hathaway v. Town of Cincinnatus,* 62 N. Y. 434.

I am also of the opinion that defendants are liable upon another theory, namely, that the Appraisals company while acting as the special agent of defendants, in the course of its employment converted the cashier's check, the property of plaintiffs, to the use of its principals, defendants. For this tortious act defendants, as the principals of their special agent, are liable although they did not authorize the tortious act or justify or participate in it; and I think they might be so liable even if they had expressly disapproved and condemned the tortious act. *Keedy v. Howe,* 72 Ill. 133; *Noble v. Cunningham,* 74 Ill. 51; *Pfeffer v. Farmers State Bank of Schaumburg,* 263 Ill. App. 360.

Moreover, I cannot agree to the general proposition expressed in the opinion, that plaintiffs were negligent because they failed to put a notation on the cashier's check giving a particular description of the particular piece of property on which taxes were to be paid. No authority is cited for the proposition that any such duty rested upon plaintiffs under the circumstances; and I think none can be found.

The vice in the opinion, as I see it, is the failure to recognize the fact that the Appraisals company acted as the special agent of each of the parties for a particular purpose.