UTTERBACK-GLEASON COMPANY, Respondent, *v.* THE STANDARD ACCIDENT INSURANCE COMPANY OF DETROIT, MICHIGAN, Appellant.

Third Department, November 10, 1920.

**Insurance — automobile insurance against liability for bodily injury — action by insured against insurer — settlement and release of prior action brought against plaintiff — defense founded on fraud in settlement — estoppel of insurer by continuing to defend insured.**

Action against a foreign insurance company authorized to do business in this State which had insured the plaintiff against damage resulting in bodily injury through the operation of automobiles to recover a sum which the plaintiff paid on account of a judgment recovered against it for damages arising from a collision between an automobile owned by the plaintiff and another automobile in which the plaintiff in the other action was riding. It appeared that the owners of both of the automobiles which collided carried accident insurance and that the parties riding in the cars brought separate actions against each other, founded upon their respective negligence. It further appeared that the plaintiff in this action settled with the plaintiff in the other action and with his insurance carrier for any damages caused by the collision, which settlement was evidenced by a release in writing which provided that the settlement was without prejudice to any of the suits brought or to be brought by the other plaintiff or the passengers riding in his car, with a further provision that the liability of the present plaintiff shall be in all respects as if said settlement were not made and that said settlement shall in no way be used to defeat any suit that may be brought by the other plaintiff or his

passengers against the present plaintiff or to defeat suits already brought. The release was not offered in evidence in the subsequent action. The attorney who negotiated said settlement for the present plaintiff was the same person employed by the present defendant to defend the actions brought against this plaintiff and the present defendant contends that it is not liable upon its policy of insurance upon the ground that there was a conspiracy between its attorney and the attorneys of the plaintiff in the other action at the time of the settlement thereof. It appears, however, that the present liability of the defendant is predicated upon the action of the wife of the other plaintiff with whom the settlement was made and who was insured against accidents by a different company so that the release for the damages satisfied in the instrument of settlement in no way involved the defendant's liability in the present case founded upon a different action.

Evidence examined, and *held*, that the defendant, by continuing to defend the case brought against the present plaintiff after said settlement made by the plaintiff, waived its right to take the position that said settlement was fraudulent and the result of a conspiracy and is estopped from raising the question and is liable upon its policy of insurance.

JOHN M. KELLOGG, P. J., dissents, with memorandum.

APPEAL by the defendant, The Standard Accident Insurance Company of Detroit, Michigan, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Albany on the 28th day of January, 1920, upon the decision of the court rendered after a trial at the Albany Trial Term before the court without a jury.

*Neile F. Towner*, for the appellant.

*Rosendale, Hessberg, Dugan & Haines* [*P. C. Dugan* of counsel], for the respondent.

KILEY, J.:

The plaintiff in this action has its principal place of business at Bangor, Penobscot county, State of Maine. It is a corporation organized and existing under the laws of that State. Defendant is an accident insurance company organized and existing under the laws of the State of Michigan. Both corporations are authorized to do business in this State. John G. Utterback was president of the plaintiff and resided at Bangor, Maine. Edward E. Piper, it may be inferred from the evidence, lived in Penobscot county, Maine. Pearl G. Willey and Caroline T. Willey resided at Camden, in Knox county,

Maine. It is necessary to keep in mind, in the consideration of the evidence in this case, the distinct personalities of Pearl G. and Caroline T. Willey. On the 8th day of July, 1916, the plaintiff in the course of its business was operating an automobile on the highway between the town of Hampden and the city of Bangor, Maine; the president, John G. Utterback, was driving with one Edward E. Piper as passenger. At the same time and at the same place the said Pearl G. Willey with his wife, Caroline T. Willey, and others, was driving his automobile. These automobiles collided, both drivers and Caroline T. Willey and Edward E. Piper were injured; plaintiff's car was injured. The plaintiff herein was insured against damage resulting in bodily injury by this defendant. Pearl G. Willey was insured against damages resulting from such injury by the Employers' Liability Assurance Corporation. Thereafter the said John G. Utterback and the said Edward E. Piper, claiming that the said Pearl G. Willey was negligent and the said negligence was responsible for the collision, brought separate actions against the said Willey for damages. In the month of August, 1916, Pearl G. Willey, his wife, Caroline T. Willey, and George Wilcox brought actions against this plaintiff in Knox county, Maine, claiming that the automobile owned and operated by the plaintiff in its business on the day of the accident was negligently run and operated and was the cause of the collision. The record shows, and no question is raised, that the defendant within a reasonable time thereafter was notified and hired an attorney to defend the action. On January 5, 1917, John G. Utterback, Edward E. Piper and the respondent herein settled with Pearl G. Willey and his insurance carrier for any damage which they and each of them received by reason of the collision of Pearl G. Willey's car with the car of this plaintiff; such settlement was evidenced by a release in writing by said plaintiff and claimants in their actions and claim against the said Pearl G. Willey. Said release recognized a substantial sum or sums passing to the plaintiffs and claimant for damages against the said Pearl G. Willey. It was therein provided as follows: " It is mutually agreed and understood by and between the parties hereto that the said Piper, Utterback and Utterback-Gleason Company, shall and do hereby accept said sums in full settle-

ment of all claims as aforesaid, absolutely without prejudice to the question of fact as to who was liable for the aforesaid accident and absolutely without prejudice in any way to any suits already brought, or to be brought by said Willey, or the said passengers in the Willey car at the time of the accident, or others interested against said Utterback-Gleason Company, Utterback or any others against whom suit or suits may be brought as the result of said collision.  This settlement and agreement is made on the distinct understanding that the liability of said Utterback or said Utterback-Gleason Company shall be in all respects as if these settlements were never made, and said settlements shall in no way be used to defeat any suits that may be brought by said Willey or his passengers as aforesaid against said Utterback or Utterback-Gleason Company or others or to defeat suits already brought."  The attorney of the plaintiff and this respondent in this settlement was the same attorney theretofore employed by this appellant to defend the action brought against this plaintiff and respondent by Caroline T. Willey.  In April, 1917, the case of Caroline T. Willey against this plaintiff, respondent, as defendant, was tried and she recovered a judgment for $2,637.77.  The attorney of the defendant, appellant herein, defended the action against this plaintiff, respondent herein.  The attorney for the defendant, appellant herein, and who, on the retainer of this appellant, defended the case of Caroline T. Willey against this respondent, was Donald F. Snow of Bangor, Maine.  He says that he mentioned the fact of this settlement soon after it was made, in a letter, but the letter could not be or was not produced; but a letter of date of February 24, 1917, was produced, written by Snow to the appellant as a report of the condition of the case against the respondent.  He mentioned the fact that they were ready to try the case settled on January fifth, and that then they were going to take the witnesses and start immediately for Rockland, county seat of Knox county, to try the Caroline T. Willey case, when the case there was settled; telling how, and that coupled with the offer was the provision that the Knox county cases should be continued until the April, 1917, term, and that he expected a proposition for settlement of the Caroline T. Willey case.  He sent a copy of the release with his letter.  On

February 27, 1917, Mr. M. C. Yerkes of the appellant's liability claim department, wrote a letter to their attorney, Mr. Snow, in which he says the insurance carrier cannot be deprived of the right to use the release as a defense and advises the plea should be amended to that effect, and adds: " It is, of course, assured's privilege to settle his own suits. It is our absolute right to avail ourselves of such a release as a defense." Shortly after the writing of this letter appellant went to Maine and retained George H. Morse, an attorney of that State, to take charge of the defense of the Caroline T. Willey action; but continued Mr. Snow in the case. It develops in the evidence of Mr. Morse, given upon this trial, that he discussed with a representative of the appellant the competency of the release as a defense in the Caroline T. Willey case and examined the law of the State of Maine bearing upon that proposition, and he refused to ask a question that he did not deem admissible; still he was continued in the case. It will be noted that this conversation took place late in February or the first days in March, 1917. This trial was had the following month (April), with the result as above stated. On May 22, 1917, a month and more after the case was tried by appellant's attorney, it sent a letter to this respondent disclaiming liability because of the release and stipulation; but says it will continue to defend the suit and take an appeal from the judgment without waiver of its right to disclaim liability, etc. The respondent on May 29, 1917, replied to that letter; saying it had not violated any provision of the policy, and continued: " Not admitting, therefore, that we have in any way violated the conditions of the policy, we will not accept your proposition to defend the suits without waiver of or prejudice to your right to disclaim liability. On the contrary, we insist upon the terms of the policy, and shall expect you not only to defend the suits but to pay any judgments which may be rendered." On June 1, 1917, the appellant herein, in reply to the last letter, wrote another to the respondent, acknowledging the receipt of the letter of May twenty-ninth, and practically repeated its former threat to abandon the case; to that the respondent did not reply. Appellant contends that its failure to further object was consent that appellant continue its attorneys in the cases. Respondent had stated its position once, in language that

admits of no criticism of ambiguity; it was not called upon to do so again.   The judgment was appealed from and resulted in affirmance which was entered about January 9, 1918. Plaintiff, respondent here, paid it and demanded repayment of the amount from appellant, which payment was refused. This action followed which resulted in the judgment appealed from here.   The action was tried before the court without a jury.   There is really but one main ground upon which the appellate court is asked to reverse this judgment, viz., that plaintiff, respondent, violated its contract of insurance with the defendant, appellant, in that there was a conspiracy between its attorney, who was also respondent's attorney, and the attorneys of Pearl G. Willey when the suits brought against said Willey by this plaintiff, respondent, and others, were settled.   If that claim could be established all other claims made by the appellant would come within it; if it cannot be established, then the potency of all other claims fall with it.   In taking up the consideration of this question, as before observed, it is necessary to keep in mind the distinction between Pearl G. Willey and Caroline T. Willey, his wife.   The actions settled were against Pearl G. who was insured by the Employers' Liability Assurance Corporation.   Caroline T. Willey was the plaintiff in the action against respondent, upon the judgment in which the liability of appellant is predicated.   The release for the damage satisfied in that instrument in no way involved the appellant here, so far as any responsibility was concerned; that is admitted in the legal evidence of defendant, appellant, upon the trial of this action.   Did it, otherwise involve this insurance company?   The position taken in opposition to the payment of this judgment, and in answer to the foregoing question is, that its attorney, who was also attorney for respondent, conspired with the attorney and counsel representing Pearl G. Willey to suppress or prevent the use of this release as evidence on the part of the defense of the action brought by Caroline T. Willey.   To determine the potency of the release as evidence we must examine the release itself.   Loose talk between the carrier and the assured and the attorney for each before this action was tried, as to what advantage would be gained by trying one case before the other, is of no probative value.   If there is any vice it must be looked for and

found in the written instrument designated as a "release." We find, as the first prohibitive statement in said release, after stating the said several sums shall be in full of all claims, the following: "Absolutely without prejudice to the question of fact as to who was liable for the aforesaid accident." Both, and all actions, were based upon the alleged negligence of the parties. Who was the real offender was the question reserved for determination in this action. The following statements contained in the one paragraph revert back to the proposition reserved, viz.: Who was negligent? It states that the release shall not be used to defeat the claims had against this respondent. Those were claims based upon negligence. In other words, the force of the release was to the effect that when Pearl G. Willey purchased his peace he stipulated that it should not foreclose evidence on the part of either, necessary to try out and reach a determination of the main and basic question in the case, of which of the parties was negligent. That question was fully tried and the only complaint seems to be that attorneys acting for appellant did not put in evidence this release or attempt to do so, so as to get it before the jury, not as a defense, but for the effect it would have upon the jury. The evidence discloses that the attorneys for appellant advised their client, some little time before the trial, that it was not competent and that it would not be offered because it was considered incompetent. M. C. Yerkes, of the appellant's claims department, was an attorney and knew of each step in the case; Knowles, another representative, the chief adjuster of the company, was another lawyer, and the question was personally discussed with him. The effect of this knowledge will be considered later; suffice to say here I am in sympathy with the holding in *Reich* v. *Cochran* (102 N. Y. Supp. 827), at page 834, where the judge trying the case at Special Term says: " The omission to set up a futile defense and to attempt to prove it involved no lack of reasonable diligence upon the attorney's part." While I do not suggest that the agreement in respondent's policy, not to settle litigation without the consent of the carrier, is against public policy, and do not deem it necessary to involve that question here, yet in view of appellant's claim that this settlement, evidenced by the release, was against public policy (*Matter of Snyder*, 190 N. Y.

66) does present profitable suggestions. In order to find conspiracy, fraud and bad faith must be found. Neither has been proved against this respondent. An action can be maintained by a client against his attorney for negligence, lack of skill or legal knowledge under certain circumstances. (*Cleveland* v. *Cromwell*, 110 App. Div. 82.)   Not so here, because appellant was advised by its attorneys of the position that would be taken with reference to that evidence, and such advice was given after a study of the law of Maine upon that subject. (102 N. Y. Supp. *supra.*)   This conclusion leads naturally to the effect of appellant's attitude after it had knowledge of the fact that its then attorney declined to offer the release as evidence, basing their ground upon the fact that it was incompetent.   It will be recalled after having this knowledge it waited a month before taking any stand; that it had been warned by the respondent that, notwithstanding its disclaimer, it would be held to the insurance contract and that it (appellant) need not continue in the case under any other condition.   Appellant kept in and defended the case; prepared and argued it upon appeal and took all chances, according to its theory upon respondent's money, until it was finally determined that some one must pay Caroline T. Willey for her injury.   Then appellant refused to pay.   It could not keep control of the action and thus gamble with the release and its idea of suppression of evidence in a former action brought against a third party and covered by another's insurance contract.   The appellant waived any right to take its present position and is estopped from raising the question. (*Rosenbloom* v. *Maryland Casualty Co.*, 153 App. Div. 23; *Sachs* v. *Maryland Casualty Co.*, 170 id. 494; *Titus* v. *Glens Falls Ins. Co.*, 81 N. Y. 410.)   *Rothschild* v. *Title Guarantee & Trust Co.* (204 N. Y. 458) at page 464 of the opinion holds that when a party with knowledge or sufficient notice of his rights freely does what amounts to a recognition or adoption of a contract as existing, or acts in a manner inconsistent with its repudiation, he assents to it and is equitably estopped from impeaching it, although it originally may have been void or voidable.   We might stop here and feel that the judgment appealed from should be affirmed.   Appellant in some of the correspondence with its attorney asserted that the settlement

was an admission or confession of negligence. *Baldwin* v. *New York Central & H. R. R. R. Co.* (18 N. Y. St. Repr. 958; affd., 121 N. Y. 684) and *Casucci* v. *Allegany & Kinzua R. R. Co.* (65 Hun, 452), cited by respondent, seem to be in point.

The case was ably tried and carefully and ably considered by the trial judge, as evidenced by his opinion, and his conclusion should be sustained.

The judgment should be affirmed, with costs.

All concur, except JOHN M. KELLOGG, P. J., dissenting, with a memorandum.

JOHN M. KELLOGG, P. J. (dissenting):

When the plaintiff induced the defendant to employ the plaintiff's attorney and join with it in defending any actions arising from the accident, and the attorney Snow knew of that understanding and was representing both parties, the parties, in a way, united their interests in such a way that absolute good faith was required from one to the other. Each was deprived of the independent right of acting in his own behalf without the concurrence of the other and the attorney was precluded from favoring one side as against the other. By the settlement and release the plaintiff, the attorney Snow and the others conspired to beat the insurance companies and help themselves. It is not just or fair that the plaintiff, having been untrue to the agreement and false to its implied promise to the defendant, should now recover. As I understand, the grievance of the defendant is not that there was a fraud in not putting the release in evidence, but that the release was the result of a fraud by the plaintiff and the defendant's attorney by which the defendant's release rights were impaired. The conspiracy which resulted in the release had as its basis to defeat both insurance companies and to compensate both parties to the accident, the negligent party and the innocent party as well. I favor a reversal.

Judgment affirmed, with costs.