## CLAVERIE v. AMERICAN CASUALTY CO. OF READING, PA.

### No. 3782.

Circuit Court of Appeals, Fourth Circuit.
April 2, 1935.

Carl W. Greene and J. W. Pless, both of Asheville, N. C., for appellant.

John Du Bose, of Asheville, N. C. (Haywood Parker and S. G. Bernard, both of Asheville, N. C., on the brief), for appellee.

Before PARKER and SOPER, Circuit Judges, and GLENN, District Judge.

SOPER, Circuit Judge.

American Casualty Company of Reading, Pa., defendant in the District Court, issued a policy of insurance on July 30, 1930, to J. S. Claverie, the plaintiff, whereby it agreed to insure him against loss for the liability imposed upon him by law for damages on account of bodily injuries accidentally suffered by any person by reason of the ownership, maintenance, or use of the automobile insured therein; and to defend, at its own cost and in the name and on behalf of the assured, any legal proceedings that might be instituted against the assured to enforce a claim covered by the policy for damages on account of bodily injuries. The policy disclosed that the assured kept a drugstore in Asheville, N. C., and that the automobile insured was a Harley-Davidson motorcycle model 29J, engine No. 12666, which was used for the delivery of merchandise in Asheville and vicinity. The premium paid was $15.75. The liability of the company was limited to $5,000 for any one person, and in any event, to not more than $10,000. The period covered by the policy was one year.

With respect to claims for damages against the assured growing out of the use of the vehicle, the policy provided that the assured should not voluntarily assume any liability nor interfere in any negotiations or legal proceedings conducted by the company on account of any claim, nor, without the company's written consent, incur any expense except for imperative surgical or medical relief at the time of the accident; and also that, under the direction of the company, the assured should at all times render such reasonable and necessary co-operation and assistance as would enable the company to effect settlements, defend suits, or prosecute appeals. It was further provided that, in the event the automobile covered by the policy should be sold, transferred, or assigned, the indemnity provided by the policy should not extend to the purchaser, transferee or assignee, except by written consent of the company indorsed thereon.

On September 5, 1930, the plaintiff sold the motorcycle described, and purchased another Harley-Davidson motorcycle, model 29JD, engine No. 13963, and thereafter, during the time under consideration, the last-named motorcycle was the only one owned or operated by the plaintiff.

On May 23, 1931, an employee of the plaintiff, while operating the last-named motorcycle in making a delivery for the plaintiff, came into collision with one Rudolph Alonzo in the city of Asheville, whereby Alonzo was seriously injured. On May 25, 1931, the plaintiff made a written report of the accident to the defendant, in which he set out the motor and engine numbers of both motorcycles. On May 26, 1931, the agent of the defendant wrote its adjuster a letter, inclosing the plaintiff's report of the accident and calling attention to the fact that the policy had not been changed to conform with the numbers of the new motorcycle purchased by the plaintiff in exchange for the old shortly after the poli-

cy was issued; the insured having told the agent that he was negotiating for a new machine, but having failed to instruct him to endorse the policy; that there was, of course, no increase in the risk, as the insured had only one motorcycle; and advice was requested by the agent as to what steps should be taken to clear up the case. On May 26, 1931, the defendant, at the request of the plaintiff, issued a change of car indorsement to be attached to and made a part of the policy, whereby it was agreed that the policy should cease to cover the first-mentioned motorcycle and should be extended to cover the last-mentioned motorcycle.

On September 28, 1931, Alonzo brought action in the general county court of Buncombe county against the plaintiff for the damages sustained by him in the accident. Thereupon the plaintiff notified the insurance company of the suit, and the latter employed counsel to defend the action. Upon the trial of the case, Alonzo submitted to a voluntary nonsuit. Thereafter on August 4, 1932, he brought another action against the plaintiff, who again notified the defendant of the suit, and the latter again employed counsel to defend the action, upon the trial of which there was a judgment for $5,000 and costs against the plaintiff, which, upon appeal, was affirmed. At the time of the institution of the pending suit, this judgment was of record in Buncombe county and had not been satisfied.

After the Supreme Court of North Carolina had affirmed the judgment, the defendant company notified the plaintiff that it denied any liability under the policy on account of the accident on the ground that the motorcycle involved was not covered by the policy at the time of the accident; and thereupon the plaintiff brought the pending action in the superior court of Buncombe county, which the defendant caused to be removed to the District Court. Upon the bringing of both of the actions by Alonzo against the plaintiff, and upon notification thereof to the defendant, the defendant instructed the plaintiff to deal with the attorneys employed by it, and, as a matter of fact, the plaintiff had nothing to do with the employment of any counsel, and did not participate in any way in the litigation except as instructed by counsel for the defendant. No question was raised as to the liability of the defendant upon the policy until after the determination of the whole matter in the Supreme Court of North Carolina.

The present suit is an action at law upon the policy of insurance, wherein the above facts are pleaded in substance, and the plaintiff prays for a judgment in the sum of $5,000, the amount of the policy, with interest from January 23, 1933, and for the costs of the action taxed in the Alonzo suit, claiming that, by reason of the policy of insurance and the subsequent proceedings, the defendant is indebted to the plaintiff in that amount. The company defended the action on the ground that, prior to the accident, the plaintiff had parted with title to the motorcycle mentioned in the policy, and that the motorcycle used by the plaintiff at the time of the accident was not covered by the insurance. The case was submitted to the District Judge on an agreed statement of facts; and he held that the policy of insurance ceased to exist when the plaintiff sold the motorcycle first described therein, and that consequently there was no contract between the parties at the time of the accident on May 23, 1931, and no terms of any policy which the defendant could waive so as to make it liable for the amount of the insurance originally issued. Accordingly, there was a verdict and judgment for the defendant, from which this appeal was taken.

The decision of the District Court rests upon the ground that original primary obligations are not created by waiver, and hence there is no field for the application of the doctrine of waiver in favor of the insured under a policy of liability insurance, when the event, upon which his claim is based, did not give rise to any liability on the part of the insurer when it occurred. To hold the insurer liable under such circumstances would be to create an obligation without giving any consideration therefor, and the result would be the same whether the policy had previously expired or the occurrence did not come within its terms. Belt·Auto. Ind. Ass'n v. Ensley Trans. & S. Co., 211 Ala. 84, 99 So. 787; Williston, Contracts, § 763.

This view, however, is not decisive of the pending case, for it does not recognize that the conduct of the insurer when the accident occurred amounted, not merely to a waiver, but gave rise to an estoppel which precludes the insurer from making the defense upon which it could otherwise rely. With full knowledge that the motor-

cycle used by the policyholder at the time of the accident was not covered by the policy, and with specific information nevertheless that the exchange of machines had not increased the risk of accident or loss, the insurance company indorsed the new motor numbers upon the policy, and retained the premium; and, without any notice to the insured that liability under the policy was questioned or denied, it undertook the defense of the action brought by the injured man precisely as it would have done if its liability had been beyond dispute. Since all of this was done by the insurer with its eyes open, we may fairly assume that it perceived some business advantage in the preservation of its reputation and good will, in refusing to take advantage of what would have seemed like a technicality to the man on the street. But, aside from this consideration, the policyholder was naturally led to believe that liability for any damages recovered in the suit was admitted, and therefore relinquished all control over the litigation, as under the policy he was obliged to do. We have no doubt that there was distinct detriment to the insured in placing the case in the company's hands, unless the company was to pay the loss, for it is common knowledge that the amount recovered in such suits, either through settlement or trial, is likely to be increased when it is known that an insurance company will pay the bill. The elements of what has been called a promissory estoppel were present, in that the policyholder was led to infer that the company intended to abandon its existing right of defense and to indemnify him for loss to the amount of the policy, whereby he was induced against his interests to surrender control of the litigation. Williston, Contracts, §§ 139, 679, 693; Union Mutual Life Ins. Co. v. Mowry, 96 U. S. 544, 24 L. Ed. 674; Glens Falls Portland Cement Co. v. Travelers' Ins. Co., 162 N. Y. 399, 56 N. E. 897.

It is quite generally held that a liability insurer is precluded, in an action on a policy, from setting up the defense of noncoverage, when it assumes and conducts the defense of an action against the insured, with knowledge of facts taking the accident or injury outside the coverage of the policy, and without disputing its liability and giving notice to the insured of a reservation of its rights. Employers' Liability Assur. Corp. v. Chicago & Big M. C. & C. Co. (C. C. A.) 141 F. 962; Empire State Surety Co. v. Pacific Nat'l Lumber Co. (C. C. A.) 200 F. 224; General Tire Co. v. Standard Accident Ins. Co. (C. C. A.) 65 F.(2d) 237; Humes Cons. Co. v. Phila. Cas. Co., 32 R. I. 246, 79 A. 1, Ann. Cas. 1912D, 906; Malley v. American Ind. Corp., 297 Pa. 216, 146 A. 571, 81 A. L. R. 1322; Rosenbloom v. Md. Cas. Co., 153 App. Div. 23, 137 N. Y. S. 1064; Utterback-Gleason Co. v. Standard Acc. Ins. Co., 193 App. Div. 646, 184 N. Y. S. 862; Id., 233 N. Y. 549, 135 N. E. 913; Fullerton v. U. S. Cas. Co., 184 Iowa, 219, 167 N. W. 700, 6 A. L. R. 367; Sanders v. Frankfort Ins. Co., 72 N. H. 485, 57 A. 655, 101 Am. St. Rep. 688; Fairbanks Canning Co. v. Guar. & Acc. Co., 154 Mo. App. 327, 133 S. W. 664; Globe Nav. Co. v. Md. Cas. Co., 39 Wash. 299, 81 P. 826; Horn v. Commonwealth Cas. Co., 105 N. J. Law, 616, 147 A. 483; Tozer v. Ocean Acc. & Guar. Corp., 99 Minn. 290, 109 N. W. 410; Tozer v. Ocean Acc. & Guar. Corp., 94 Minn. 478, 103 N. W. 509; Cowell v. Indemnity Corp., 326 Mo. 1103, 34 S.W.(2d) 705; 81 A. L. R. 1327, note. See, also, Fidelity & Cas. Co. of N. Y. v. Rosenheimer (C. C. A.) 17 F.(2d) 961; Commercial Cas. Ins. Co. v. Fruin-Colnon Cont. Co. (C. C. A.) 32 F.(2d) 425; Rothschild v. Title Guar. & Trust Co., 204 N. Y. 458, 97 N. E. 879, 41 L. R. A. (N. S.) 740. Compare the following cases in which it was held in substance that prejudice to the insured is not necessarily to be inferred from the assumption of control of the litigation by the insurer. Lunt v. Aetna Life Ins. Co., 261 Mass. 469, 159 N. E. 461; London Guar. & Acc. Co. v. American Cereal Co., 159 Ill. App. 537; American Cereal Co. v. London Guar. & Acc. Co. (C. C. A.) 211 F. 96; Stearns Lumber Co. v. Travelers' Ins. Co., 159 Wis. 627, 150 N. W. 991.

In the application of the doctrine of estoppel to circumstances of the sort under consideration, there is no substantial distinction between a defense on the ground that the policy was not in existence when the loss occurred and a defense based on noncoverage of a policy that is extant. In one case, as in the other, no liability of the insurer exists when the cause of action against the insured arises; and, in order to bring such a liability into existence, a new consideration must be given, or some action sufficient to constitute an estoppel must occur. In addition, it may be noted that, in the pending case, the policy of insurance sued on, covering the motorcycle used in the accident, was revived by indorsement of the company before the pending suit was brought.

Reversed.