Charles Fray, Appellee, v. National Fire Insurance Company of Hartford, Appellant.

Gen. No. 8,330.

210

Opinion filed October 23, 1929. Rehearing denied January 10, 1930.

CARL S. REED and HICKS & FOLONIE, for appellant.

HERRICK & HERRICK, for appellee.

MR. PRESIDING JUSTICE ELDREDGE delivered the opinion of the court.

Appellee recovered a verdict and judgment for the sum of $1,500 on a policy of fire insurance for the loss by fire of a certain building and store, office furniture and fixtures therein, located at Mansfield, Piatt county.

The policy, among other things, contained a provision that it should be void if the interest of the insurer was other than unconditional and sole ownership. As evidence of title, appellee introduced a warranty deed executed May 15, 1923, by A. J. Vaughn and wife, and Curtis C. Curl and wife to William Kersten and Cecil Kersten, of the premises in question. Also a quitclaim deed from William Kersten and Cecil Kersten executed March 9, 1926, conveying the same premises to appellee. William and Cecil Kersten also on March 9, 1926, executed a bill of sale to appellee, conveying all the restaurant and confectionery furniture, fixtures and stock on hand and all personal property used in the above confectionery and restaurant business located in the building on said premises. On said date of

March 9, 1926, appellee and William and Cecil Kersten executed a declaration of trust wherein, after referring to the quitclaim deed of the real estate and the bill of sale of the personal property, is as follows:

"It is therefore understood and agreed, by the parties hereto, that in consideration of the conveyance and transfer of the real estate and personal property above described, the said first party herein, C. L. Fray, agrees to purchase of the hereinafter described creditors, who now hold accounts and claims against the said William Kersten, valid claims which they now have, who are willing to accept the same at the sum of twenty-five cents on the dollar for their respective claims, and said creditors being described as follows (naming them):

"The said first party will sell the real and personal property conveyed to him above described at the best obtainable price and on the best terms that he can obtain which, in his judgment, are for the best interests of the second parties, William Kersten and Cecil Kersten; that he will keep the premises insured for a reasonable sum and keep up any necessary repairs and pay the taxes on said premises and property; that he will dispose of and sell the said premises and personal property and may sell it altogether or in separate parts at the best obtainable price and terms according to his best judgment for the realization of the most moneys possible from said premises and property.

"The first party may lease said premises and personal property either one or both, pending or until able to sell said premises at a price and terms satisfactory to first party.

"Said first party will keep an accurate account of all receipts and expenditures in connection with said property and after deducting the costs and expenses of caring for said property, including insurance and the amount of the lien of the first mortgage upon said real estate and after deducting the amount of money, to-

gether with the interest on the same advanced for the payment of creditors above set out and listed, which may care to sell their claims for the sum of twenty-five cents on the dollar, said first party shall apply any surplus or remaining amount toward liquidation and payment of the indebtedness now due from William Kersten to the State Bank of Mansfield and W. H. Firke.

"In consideration of the premises, said second parties agree to renew the indebtedness to the said State Bank of Mansfield and W. H. Firke, as may be desired or required.

"The first party herein shall consult and confer with the said William Kersten in the matter of the sale or leasing of the said property or any of it, and shall confer with said William Kersten as to any sale or other disposal or renting of said premises, with a view to co-operating as to what may be best for the interests of Mr. Kersten. The judgment of the first party herein shall, however, be final in reference to any action taken by him in connection with said property."

It is strenuously insisted that this declaration of trust impresses the original conveyances with the character of mortgages and that appellee was not, under the terms of the policy, an unconditional and sole owner of the property destroyed by the fire. The contention cannot be sustained. The conveyances mentioned above are absolute on their face. The grantors therein owed no debt to appellee and there is no defeasance clause in either of them. By the terms of the trust agreement, appellee was given the power to sell in fee simple. He could not convey title unless he was in possession of the title. This same question was passed upon in the case of *Security Ins. Co. of New Haven v. Kuhn,* 207 Ill. 166, wherein the court held: "The title of a trustee is commensurate with the powers given and the duties imposed upon the trustee,

and in this case such powers and duties could not be exercised unless the plaintiff took a fee simple title. She could not sell and convey the fee unless she had the fee. She was not invested with a mere power over the fee, but took a fee simple title by the devise. (*Kirkland v. Cox,* 94 Ill. 400; *Preachers' Aid Society v. England,* 106 id. 125; *Green v. Grant,* 143 id. 61; *King v. King,* 168 id. 273; *Lawrence v. Lawrence,* 181 id. 248.) There was a future contingency in the unconsumed portion of the trust property existing at the death of the plaintiff, which might be in the form of real or personal property. That interest was limited upon the death of the plaintiff or the uncertain event of her re-marriage, and to dubious or uncertain persons who should be living and able to take the property at her death. It cannot be known who, if any, will be the surviving child or children, or the issue or descendant of any such child, to receive the future contingent interest. No one has a present vested estate or insurable interest except the plaintiff. In the action at law she must be regarded as the sole and unconditional owner in fee simple, although the property in her hands or the proceeds of the insurance are impressed with a trust which a court of equity will compel her to execute.''

The above case was later followed and approved in the case of *Budelman v. American Ins. Co.,* 297 Ill. 222. When the legal title of the property rests in a trustee, no one has an insurable interest in the property except the trustee.

It is also contended that appellee cannot recover because he made no proofs of loss as required by one of the conditions of the policy. The facts which are undisputed show very clearly that the proofs of loss were waived. It has been frequently held that an agent of an insurance company, who has the power to solicit insurance, receive and forward applications, receive

and deliver policies and collect premiums, even though his agency be confined to the territory in which he operates, is a general agent of the company. *Phenix Ins. Co. v. Stocks,* 149 Ill. 319; *Hancock Mut. Life Ins. Co. v. Schlink,* 175 Ill. 284; *Milwaukee Mech. Ins. Co. v. Schallman,* 188 Ill. 213; *Citizens' Ins. Co. v. Stoddard,* 197 Ill. 330; *Hodges v. Commercial Union Assur. Co.,* 246 Ill. App. 634.

The fire occurred October 3, 1927, and there was a total loss. Appellant's agent at Mansfield who wrote the policy and collected the premiums was the firm of Vaughn and Curl. On the same day as the fire, appellee had a conversation with Curl who testified substantially as follows: "Fray came to my office that morning between 8 and 9 o'clock and wanted to know about the loss, and I told him that I had the paper, and the loss report, which I made out, and mailed the original to the company and kept the copy. He asked me what he had to do and I told him he had nothing to do until I reported to the company, and the company could send proof of loss or send an adjuster, and he said, 'Then I will have to wait until the papers come, or the man, or the adjuster would come,' and I told him there would be nothing that he could do until one or the other came. J. L. Foster, the adjuster, came October 13 and we went down to the building and looked it over and then went back to the office. Foster said there was an error in the report of the loss, as it designated Fray as trustee, and the policy was to him individually; and Foster said he would have to investigate as to how this error came about. I called Mr. Fray down to talk to him and Fray went back to the bank and got the contract and they talked about it, and Foster told Fray he would have to report that to the company and as soon as he got the report from the company he would come back and adjust the loss or settle the loss. He said he did not know what way the draft would have to be made out. He also said he would have to have a report

from the fire marshal, and that when they got the fire marshal's report they would be able to settle for the loss. I had talks with Fray about the matter once or twice during the sixty-day period, and told him I had heard nothing from the Insurance Company. I told him I could not do anything until that would come, but from information we had from the company that they were going to take care of the loss." Appellee testified substantially to the same facts and there is no question from the evidence but what appellee was led to believe from the local agent of appellant and from its adjuster, Foster, that the company would settle the loss as soon as they ascertained to whom the money should be paid. The facts in this case clearly prove a waiver of proofs of loss by appellant. *Citizens' Ins. Co. v. Stoddard*, 197 Ill. 330.

What we have said above disposes of the other errors assigned except as to the form of the judgment. The judgment is not abstracted and for this reason the error might be ignored, and would be except that it might eventually deprive appellee of the benefit of his judgment.

The record shows the alleged judgment to be as follows: "Now the defendant moves the court for arrest of judgment and after due consideration said motion is by the court overruled and judgment is by the court entered herein against the defendant for the sum of $1,500 and for cost of this suit." It does not show that any judgment was rendered on the verdict, nor in whose favor, and lacks all the essential elements of a legal judgment.

The judgment of the circuit court of Piatt county is reversed and the cause remanded with directions to enter a proper judgment in favor of the plaintiff and against defendant in the sum of $1,500 and costs.

It is ordered that the costs in this court be and they are hereby taxed against appellant.

*Reversed and remanded with directions.*