Security Insurance Company of Hartford, a Corporation, Successor to New Amsterdam Casualty Company, a Corporation, Plaintiff-Appellee, v. Julius Mato and David Toth, Defendants-Appellants.

Gen. No. 68–76.

Second District.

April 7, 1969.

Coe, Rubinstein and Shafran, and Robert A. Holstein, of Chicago, for appellants.

203

McKenna, Storer, Rowe, White & Haskell, of Chicago, for appellee.

MR. JUSTICE ABRAHAMSON delivered the opinion of the court.

This is a declaratory judgment action brought by plaintiff insurance company to obtain determination as to whether defendant, Julius Mato, was insured by it at the time he had an automobile accident in which he and defendant, David Toth, were both injured. Defendant Mato filed a countercomplaint seeking expenses, costs and attorney fees relating to his own injuries and for defense of the suit brought by Toth against Mato. Plaintiff and Mato filed motions for summary judgment and presented pleadings, affidavits, depositions, exhibits and memoranda of law. The court decided the case based on this material and entered judgment holding that no policy existed between plaintiff and Mato and that plaintiff company had no obligation to defend the action brought by Toth against Mato. The defendant's motion after judgment was denied by the trial court, leading to this appeal by the defendants.

In July of 1963, defendant Mato purchased an insurance policy from Dann Brothers, Inc. of Chicago, Illinois, general agents for the New Amsterdam Casualty Company, Security Insurance Group, the plaintiff in this action, to cover an automobile which he owned. Mato had purchased other insurance from Dann Brothers, including a Homeowner's Policy. Most of his dealings with the agent were over the telephone. The policy issued on his automobile was designated Select Automobile Policy No. 29–030663, a direct billing policy. The policy covered a period from July 17, 1963, to January 17, 1964, and for the subsequent self-renewal six month periods. It provided liability insurance in the amount of $100,000 for each occurrence, medical expenses of $3,000 for each person, uninsured

motorists coverage of $20,000 for each occurrence, accidental death benefit of $1,000, comprehensive coverage for actual cash value of the automobile, $200 for personal effects, and towing coverage of $25 per disablement.

The automobile insured under this policy was a 1955 Mercury. Thereafter, the policy was renewed for successive six-month periods from January 17, 1964, to July 17, 1964, and from July 17, 1964, to January 17, 1965. On each occasion he was billed for a premium of $36 and paid as required.

On or about May 11, 1965, Mato called Dann Brothers and asked to speak with Donald Dann. Mato identified himself to Mr. Dann and indicated he had replaced the 1955 Mercury with a 1958 Ford, for which he wished the same coverage as he had on the Mercury. Mr. Dann said, "fine, don't worry about a thing. I will refer you to one of the girls to get the necessary information." A secretary came to the phone and stated that according to the file his automobile insurance policy had lapsed as a result of his failure to pay the premium when due in January of 1965. She stated, however, that the problem would be rectified and he would be covered and that Dann Brothers would send out a confirmation of the new coverage within a few days. She then asked for certain information concerning the new automobile which Mato did not have at hand. He inquired about payment and was told not to send any money until he received a bill. Mr. Dann then returned to the phone and thanked Mato for calling and stated, "don't worry about a thing, you have the same insurance you had before; enjoy your car." Within a day or two Mato again called Dann Brothers and talked to someone he believed to be the same secretary he had talked to on the first occasion, supplied the necessary information regarding his automobile, including the serial number.

On May 15, 1965, Mato received in the mail at his home from Dann Brothers, Inc., two papers stapled together.

The first was a small sheet entitled "Endorsement." It was dated May 14, 1965, and said "This endorsement forms a part of your policy and should be attached to the same without fail." It reflected automobile coverage under New Amsterdam Casualty policy No. 29–030663. Attached to this paper was one entitled "Amendment of Declarations (Select Automobile Policy)." This item showed that it was endorsement #1 and contained a description of the car. It contained the same coverage as he had on his old Mercury, showed an effective date of May 11, 1965, attached to and forming part of Policy No. 29–030663 issued to Julius Mato and dated May 14, 1965. This endorsement was signed by both the president and secretary of New Amsterdam Casualty Company and countersigned by Armand L. Dann, one of the Dann Brothers who signed as authorized representative.

On June 20, 1965, Mato was involved in an automobile accident in which he was the driver and defendant Toth was a guest passenger. Both were severely injured. During his convalescence Mato was interviewed by a representative of plaintiff company, who took a written statement from him. A short time later a second representative of plaintiff company came to Mato's place of business and took a statement. Both of these representatives of plaintiff company told Mato that he had nothing to worry about since he had complete coverage. He was instructed to send his medical bills to the plaintiff and complete the necessary Proof of Loss forms, which he did. During this time a representative of plaintiff's Claim Department advised Mato that plaintiff would take care of everything.

Some months later another representative of plaintiff took another statement from him. Within a few days after the accident, plaintiff company was apprised of the fact that it might have a policy defense and notified Dann Brothers, Inc. that "This policy was lapsed 2/1/65 for nonpayment." This notification was received by Dann

206

Brothers, Inc., on June 25, 1965. On that same day Dann Brothers wrote Mato "We never received notification that you desired reinstatement, therefore, nothing further was done with your policy." Plaintiff undertook to defend Mato and it was not until approximately 16 months after the accident that Plaintiff adopted an adverse position to Mato by filing its complaint for declaratory judgment.

Defendant contends that the issues presented for review are: (1) whether defendant Mato's policy of insurance lapsed or expired on January 17, 1965; (2) if lapsed or expired, whether the policy was reinstated by plaintiff's general agent, Dann Brothers, Inc., as a result of telephone conversations with defendant Mato; (3) if not reinstated, whether an oral contract for insurance coverage later confirmed in writing by Dann Brothers, Inc. was entered into between Dann and Mato; and (4) whether plaintiff is estopped to deny coverage.

■■ In our view of the facts presented to us for consideration, we do not deem it necessary to pass on either of the first two contentions of the defendant. It has been settled by many decisions that suit to enforce the liability of an insurance company may be brought on a contract for insurance as well as on the policy itself. Where the parties have agreed upon all of the essentials of the contract it is sufficient to hold the insurance company. Cottingham v. National Mut. Church Ins. Co., 290 Ill 26, 32, 124 NE 822. It is sufficient if one of the parties to such a contract proposes to be insured and the other party agrees to insure, and the subject, period, amount and rate of insurance agreed upon. On the record before us there can be no doubt that the parties agreed upon the essential elements of a contract of insurance. Defendant specifically requested the same coverage he had had before. He was orally assured that he would have such coverage. It is not necessary that all of the details of the coverage be agreed upon. It is sufficient if the elements are understood or can be ascertained. Barlow v.

Farmers' Mut. Fire Ins. Co., 128 Ill App 580, 582, 583; Continental Ins. Co. v. Roller, 101 Ill App 77, 79.

■ Defendant Mato and the general agent knew the terms of his prior policy. The endorsement sent by the general agent to defendant Mato showed the extent of the coverage, the amount of premium and showed on its face that the premium was for a six-month period commencing May 11, 1965. It cannot be argued that the premium was due and not paid. It appears defendant Mato specifically inquired about payment and was told not to send any money but that he would be billed. We cannot agree with plaintiff's contention that there was no meeting of minds between Mato and Armand Dann. Defendant Mato stated he desired insurance coverage and, in fact, the same coverage he had before. It is clear from the endorsement sent to him that plaintiff's general agent understood the coverage and the period to be covered and set forth the premium for such policy. We do not believe that plaintiff can contend that no contract for insurance existed because its general agent mistakenly used an endorsement rather than a binder. We do not believe defendant should be denied coverage because plaintiff's general agent may have erred.

We are of the opinion that plaintiff is estopped from denying that insurance coverage existed. Plaintiff relies heavily on the case of Bourne v. Seal, 53 Ill App2d 155, 169, 203 NE2d 12. In that case it was held that an insurance contract could not be created by estoppel. The policy in that case had expired prior to the accident. The party who had been insured had done nothing to attempt to reinstate his policy or to secure new coverage. We are of the opinion that the facts before us more resemble those presented to the court in Wille v. Farmers Equitable Ins. Co., 89 Ill App2d 377, 382, 232 NE2d 468, where it was held that the failure of the general insurance agent to properly process the plaintiff's request for insurance coverage became the failure of the insurance company

and liability was in that case imposed on defendant insurance company even though the insurance company had never received an application for insurance, nor did the agency have explicit authority to bind the company.

We are also of the opinion that the decision in the case of Zak v. Fidelity-Phenix Ins. Co., 34 Ill2d 438, 441, 442, 216 NE2d 113, is in point. In that case the plaintiff's policy had been cancelled and plaintiff had been notified. Upon receiving notification of the cancellation, plaintiff contacted an agent of the insurance company and was informed that the cancellation was probably in error and it would be corrected. At the time of the accident, plaintiff believed she was protected and that the policy was in force. Defendant insurance company undertook her defense and it was not until after judgment against plaintiff had been entered that defendant attempted to disclaim liability. The court held that where the policy had been cancelled but the facts were such that the insured had a reasonable basis for believing the policy was in force at the time of the accident, and the insurance company undertook the defense, it will be estopped from denying its liability, where plaintiff in reliance upon the actions of the company in defending her has been prejudiced. We believe that in the case before us defendant Mato would be prejudiced if plaintiff is permitted to disclaim its liability some 16 months after it knew of its possible policy defense.

For the reasons above stated, we believe the judgment of the court below should be reversed and the case remanded for further appropriate proceedings.

Reversed and remanded for further proceedings.

MORAN, P. J. and DAVIS, J., concur.