[No. 61-40829-2.   Division Two.   March 6, 1970.]

ROBERT T. PRUITT *et al., Respondents,* v. HENRY MEYER *et al., Appellants.*

*Witt, Hutchins, Plumb & Wheeler* and *R. G. Hutchins,* for appellants.

*Jones, Grey, Kenoe, Bayley, Hooper & Olsen* and *Richard I. Sampson,* for respondents.

PETRIE, J.—The dispute between these parties started out as a suit by a vendee for specific performance of a contract for the sale of real property; and ended up (this action) as a dispute between vendor and vendee as to which of the two contending parties shall be entitled to the proceeds of a fire insurance policy following a fire which destroyed a dwelling after the parties had signed an earnest money agreement but before they had executed a real estate contract and closed the sale.

Plaintiffs, Robert T. Pruitt and Meryl G. Pruitt, his wife (Pruitt), as purchasers, and defendants, Henry Meyer and Helen Irene Meyer, his wife (Meyer), as sellers, executed an earnest money receipt and agreement in February, 1967, for the sale of an 80-acre tract of land in the Ohop Valley of Pierce County. The agreement, in addition to describing the real estate, also declared, "The kitchen appliances (stove and refrigerator), the septic tank, and the furnace not now installed shall be included in this transaction." The agreement required a down payment plus a real estate

contract for the balance, due and was to have been closed on April 10, 1967.

Several terms of the agreement are considered vital and are set forth herein:

4. CONVEYANCE: . . . (b) If this agreement is for sale on real estate contract, seller and purchaser agree to execute a Real Estate Contract for the balance of the purchase price on Real Estate Contract Form No. A-1964, currently distributed by Title Insurance Companies. The terms of said form are herein incorporated by reference.
. . .
5. PRO RATA ITEMS: Taxes for the current year, rents, insurance, interest, mortgage reserves, water and other utilities constituting liens shall be prorated as of date of closing.

6. POSSESSION: Purchaser shall be entitled to possession on date of closing.

For reasons not disclosed in the record (and, by agreement of the parties, not pertinent herein), sellers refused to execute the real estate contract when it was presented to them. Purchasers thereupon brought an action for specific performance (called the "first action"). The matter was tried to the court. At the conclusion of the trial, the court orally declared for the plaintiff, Pruitt, and ordered specific performance. Two days prior to signing and entry of the decree directing specific performance (and unbeknown to either counsel when the decree was entered), the dwelling on the premises was totally destroyed by fire. Nevertheless, the parties agreed to proceed with the sale, neither party waiving any right to claim the insurance proceeds covering the fire loss. On March 19, 1968, they executed a real estate contract on form No. A-1964 as contemplated by the earnest money agreement. In addition to a description of the real estate sold, the contract also included the kitchen appliances, septic tank and furnace previously described in the earnest money agreement. Several pertinent portions of the fine print in the contract are footnoted herein.[1]

---

[1]"(2) The purchaser agrees, until the purchase price is fully paid, to keep the buildings now and hereafter placed on said real estate insured

The fire loss was covered by a policy of insurance issued by Travelers Indemnity Company for a term of 3 years commencing October 3, 1966, with Henry and Helen Meyer as the named insured. Sellers had purchased and paid for this policy months before commencement of any negotia-

---

to the actual cash value thereof against loss or damage by both fire and windstorm in a company acceptable to the seller and for the seller's benefit, as his interest may appear, and to pay all premiums therefor and to deliver all policies and renewals thereof to the seller.

". . .

"(4) The purchaser assumes all hazards of damage to or destruction of any improvements now on said real estate or hereafter placed thereon, and of the taking of said real estate or any part thereof for public use; and agrees that no such damage, destruction or taking shall constitute a failure of consideration. In case any part of said real estate is taken for public use, the portion of the condemnation award remaining after payment of reasonable expenses of procuring the same shall be paid to the seller and applied as payment on the purchase price herein unless the seller elects to allow the purchaser to apply all or a portion of such condemnation award to the rebuilding or restoration of any improvements damaged by such taking. In case of damage or destruction from a peril insured against, the proceeds of such insurance remaining after payment of the reasonable expense of procuring the same shall be devoted to the restoration or rebuilding of such improvements within a reasonable time, unless purchaser elects that said proceeds shall be paid to the seller for application on the purchase price herein.

". . .

"(9) In case the purchaser fails to make any payment herein provided or to maintain insurance, as herein required, the seller may make such payment or effect such insurance, and any amounts so paid by the seller, together with interest at the rate of 10% per annum thereon from date of payment until repaid, shall be repayable by purchaser on seller's demand, all without prejudice to any other right the seller might have by reason of such default.

"(10) Time is of the essence of this contract, and it is agreed that in case the purchaser shall fail to comply with or perform any condition or agreement hereof or to make any payment required hereunder promptly at the time and in the manner herein required, the seller may elect to declare all the purchaser's rights hereunder terminated, and upon his doing so, all payments made by the purchaser hereunder and all improvements placed upon the real estate shall be forfeited to the seller as liquidated damages, and the seller shall have right to re-enter and take possession of the real estate; and no waiver by the seller of any default on the part of the purchaser shall be construed as a waiver of any subsequent default."

tions between the parties for the sale of the premises. Notwithstanding execution of the real estate contract, the seller, Meyer, continued negotiations with Travelers to determine the monetary value of the loss. By agreement of the parties, Pruitt did not participate in these negotiations, which culminated in a settlement of $6,400. The insuring clause of the policy recited that the company " . . . does insure the Insured named in the declarations above and legal representatives, to the extent of the actual cash value of the property at the time of loss . . . ". A further provision provided, "Assignment of this policy shall not be valid except with the written consent of this Company."

In this specific action, each party contends he should receive the $6,400, which Travelers has paid into the registry of the court. Both parties moved for summary judgment. The trial court denied Meyer's motion, granted Pruitt's motion, directed the court clerk to pay over to Meyer the $6,400 on deposit in the registry of the court, but reduced the balance on the principal of the contract by the sum of $6,400.

Prior to resolving the several issues presented by this appeal, we point to the obvious—that we must resolve the issues on the basis of the agreement between the parties as it existed on the date of the fire. Unfortunately, there is disagreement between the parties as to what that agreement was. The seller, Meyer, contends that the agreement —on the date of the fire—included both the earnest money agreement and the terms and conditions embodied in real estate contract form No. A-1964. Such contention is based upon paragraph No. 4 of the earnest money agreement, which, after reciting that seller and purchaser agree to execute such a contract, declares: "The terms of said form are herein incorporated by reference."

This latter sentence must be interpreted in context with the remainder of the paragraph and in light of the suggestions for future agreements made in *Haire v. Patterson*, 63 Wn.2d 282, 386 P.2d 953 (1963). In *Haire*, the court refused to decree specific performance of a certain earnest money

agreement because the minds of the parties had not met as to the material terms of a future contract of sale called for in the earnest money agreement. By way of suggestion, and in order to avoid the pitfalls encountered by the parties in *Haire,* the court suggested at page 288:

However, if parties have a particular contract form in mind, it seems that they could evidence that fact by attaching a copy thereof to the earnest money receipt and making it a part thereof by reference, and we are aware of such a practice. We note the existence of printed earnest money agreement forms providing that the contract to follow shall be on a particular form, identified by number, publisher, and date of printing. And it would not seem an impossibility to prepare an earnest money agreement, printed or otherwise, containing within its four corners the material terms of the future contract of sale.

It seems apparent to us that the parties herein, cognizant of the necessity to specify the exact terms of the future real estate contract, have declared not only that the contract shall be executed on form No. A-1964 but also that no alteration of the basic terms of said form has been contemplated.

Furthermore, some of the "terms" of the real estate contract are inconsistent with—and even contrary to—the "terms" of the earnest money agreement. For example, in the real estate contract, taxes and assessment liens become the express obligation of the purchaser; whereas, in the earnest money agreement, the taxes and utility liens, if any, are prorated as of the date of closing.

We hold, therefore, that the terms of the real estate contract speak prospectively only from the date of execution of that contract, and not from the date of the earnest money agreement, even though the latter agreement declares that the terms of the former "are herein incorporated by reference." To hold otherwise would introduce inconsistencies into the overall agreement not intended by the parties and not warranted under any sound interpretative method of analysis.

Having so interpreted the earnest money agreement, we need not concern ourselves with the terms of the real estate contract—particularly those which (1) expressly require the purchaser to keep buildings insured against loss by fire for seller's benefit, and (2) expressly declare that the "purchaser assumes all hazards of damage to or destruction of improvements now on said real estate."

We turn now to the specific question: "Who is entitled to the insurance proceeds?" We see four possibilities which would determine upon whom the risk of loss might lie: The parties may agree that the risk of loss falls (1) upon the vendor, or they may agree that it falls (2) upon the vendee; or by operation of law, flowing from their relationship as seller and purchaser, the risk of loss may fall (3) upon the vendor or (4) upon the vendee.

There is no express provision in the earnest money agreement which places such loss either upon the vendor or the vendee. That agreement is silent as to risk of loss or insurance except that insurance premiums shall be prorated to date of closing. The proration provision does not, however, require that the vendor shall purchase or maintain insurance on the premises. Certainly it does not require the vendee to purchase such insurance. It means simply that if an insurance policy be in force on the date of closing, premiums therefor shall be prorated as of that date. Accordingly, no inference as to risk of loss arises from the provision of the earnest money agreement that insurance shall be prorated.

We need not—and do not—choose between the two possibilities which spring into existence by operation of law and by nature of the relationship of the parties. If the risk of loss falls upon the vendor, the courts will sustain even an action by the purchaser for rescission of the contract for failure of substantial consideration. However, the purchaser is not compelled to pursue rescission as an exclusive remedy. He may confirm the contract and be reimbursed by the amount of the loss. *Capital Sav. & Loan Ass'n v. Convey*, 175 Wash. 224, 27 P.2d 136 (1933). On the other

hand, if the risk of loss is upon the vendee, the courts will impress a trust in favor of the vendee upon the proceeds of insurance and reduce the principal by the amount thereof. *Gillingham v. Phelps,* 5 Wn.2d 410, 105 P.2d 825 (1940). (In subsequent litigation between the parties involved in *Gillingham,* the Supreme Court sustained the verdict of a jury which did not require reduction of the principal; but the principle involved in the first appeal was not disturbed.) *Gillingham v. Phelps,* 11 Wn.2d 492, 119 P.2d 914 (1941).

We hold, therefore, in the event of loss of a building by fire, which is covered by insurance, whether the risk of loss is upon the vendor or upon the vendee, the purchaser may have the principal reduced by the amount of the loss, in the absence of an agreement to the contrary.

The vendor insists, however, that (1) the purchaser did not bargain for the building which was destroyed; (2) the amount of insurance recovery is not the measure of damages, and (3) awarding the amount of insurance recovery to the purchaser is expressly prohibited by the terms of the insurance policy.

As to the first contention, it is obvious that the purchase of land includes all improvements thereon unless an arrangement to the contrary is expressed in the agreement. The earnest money agreement does not contain any such express declaration; rather it even expresses an intent to include certain items of personalty within the building destroyed by the fire. (The purchaser has made no claim for recovery for such loss.)

As to the second contention, the policy provision expressly declares that the named insured (Meyer) was insured "to the extent of the actual cash value of the property at the time of the loss." Further, by agreement of the parties, the negotiation for settlement of the loss was conducted soley between Meyer and the carrier, by agreement Pruitt did not participate therein. Meyer, having negotiated the settlement for the actual cash value of the building destroyed, cannot now be permitted to declare that the loss

occasioned by the fire was less than the amount of that settlement.

█ As to the third contention, the provision in the policy which declared an assignment of the policy invalid except with the written consent of the carrier could only be asserted as a defense by the carrier under an appropriate factual circumstance. (We do not pass upon the question of whether or not such a defense would be upheld under the facts herein.) By voluntary payment of the loss into the registry of the court, the carrier has waived any such possible defense.

There being no material issue of fact, and the trial court having properly decided the legal issues in accordance with the documents presented to it, the summary judgment entered by the court is affirmed.

ARMSTRONG, C. J., and PEARSON, J., concur.