NATIONAL DISCOUNT SHOES, INC., Plaintiff-Appellant, *v.* ROYAL GLOBE INSURANCE CO., Defendant-Appellee.

First District (4th Division)    No. 80-1095

Opinion filed June 18, 1981.—Supplemental opinion filed on denial of rehearing September 10, 1981.

Lemuel L. Foster, Jr., of Chicago, for appellant.

Clausen, Miller, Gorman, Caffrey & Witous, P. C., of Chicago (James T. Ferrini and Robert H. Mittelman, of counsel), for appellee.

Mr. PRESIDING JUSTICE ROMITI delivered the opinion of the court:

The plaintiff purchased property, obtained an assignment of an insurance policy covering the property from the vendor but failed to obtain the insurance company's consent to the assignment. After the property was destroyed by fire, the insurer paid the vendor the amount of

the mortgage but refused to pay the plaintiff the amount of its loss. On cross-complaint for summary judgment the trial court denied the plaintiff's claim to recover for its own loss, holding that the insurer's payment to the mortgage did not waive its defense against the plaintiff. We agree that there was no waiver but reverse and remand for a determination whether the transfer increased the insured's risk.

Until December 19, 1975, the property at 11317-24 South Michigan, Chicago, was owned by Pullman Trust & Savings Bank (Pullman) as trustee. Hazel Fisher was the beneficiary of the trust. On August 21, 1973, defendant issued a multi-peril insurance policy insuring both the building and the contents. "Pullman Trust and Savings Bank as Trustee under Trust #7180076 for Hazel M. Fisher" was designated as the named insured. The premiums were billed to Hazel Fisher, who paid the premiums. Hazel Fisher's address was given as the address of the named insured. The policy provides on the declaration page that "Assignment of this policy shall not be valid except with the written consent of this Company." The policy was for a three-year period, which period had not expired either on December 19, 1975, or on February 1, 1976, the date of the fire loss.

On December 19, 1975, the property was sold to the plaintiff, National Discount Shoes, Inc. In light of plaintiff's subsequent arguments, it is interesting to note that the contract of sale was signed by Hazel Fisher and not by Pullman Trust & Savings Bank. Hazel Fisher was also listed as the seller in the closing statement. At the time of the sale, plaintiff gave a note and trust deed for $13,000 to Hazel Fisher as part of the purchase price. At the closing Pullman executed an assignment of the policy, assigning it to National Discount as owner of the property and Hazel Fisher as mortgagee. The assignment stated that it was subject to the consent of Royal Globe Insurance Company. Furthermore, under an upper case heading "Consent by Company to Assignment of Interest," space was provided for the insurer's signature. The form was never signed, and it is undisputed that the insurer never consented to the assignment.

On February 1, 1976, the building was totally destroyed by fire. The next day plaintiff's attorney contacted the insurance agency which had issued the policy, reported the fire and told the agent that its policy was supposed to have been assigned on December 19, 1975, to the new owner and mortgagee. The agent told him that the assignment would have to be dated February 2, 1976. The insurer received notice of loss on February 5, 1976. On February 24, 1976, it and the plaintiff executed a non-waiver agreement in which it was agreed any action insurer took in investigating the claim would not waive or invalidate any of the conditions of the policy.

On May 4, 1976, the insurer denied liability to Pullman, Fisher and

the plaintiff because Pullman's and Fisher's insurable interest terminated at the time of the sale and it had not consented to the assignment of the policy to the new owner and new mortgagee. It also returned $331 representing the unearned premium. When insurer discovered Fisher was the mortgagee, it paid her $13,000, the amount of the mortgage and took an assignment of the mortgage.

The trial court held that the plaintiff was not entitled to recover on the policy for its own loss. It ruled, however, that the mortgage assignment was null and void since, as the insurer was aware, plaintiff had paid the pro rata portion of the unearned premium at the time of the closing.

Originally both parties appealed. However the insurer has not in its brief contended that the trial court's ruling as to the assignment was in error. Accordingly, this contention is waived.

I

Insurer contends that it cannot be held liable because neither waiver nor estoppel can be used to extend coverage or grant coverage where none exists, and that the insurer's actions could not be found to create a waiver or estoppel since at that time the property no longer existed. While it has frequently been stated, as an axiom, that coverage can never be extended by waiver and estoppel, in fact such statements are too broad. (16B Appleman, Insurance Law and Practice §9090 (1981).) An insurer can always create even a new contract by an express waiver. Furthermore courts have frequently employed the doctrine of implied waiver or estoppel to bar an insurer from relying on the defense of noncoverage. (See, for example, *Gibraltar Insurance Co. v. Varkalis* (1970), 46 Ill. 2d 481, 263 N.E.2d 823; *Anderson v. Safeway Insurance Co.* (1973), 10 Ill. App. 3d 597, 295 N.E.2d 117 (abstract); *Security Insurance Co. v. Mato* (1969), 108 Ill. App. 2d 203, 246 N.E.2d 685; *Wille v. Farmers Equitable Insurance Co.* (1967), 89 Ill. App. 2d 377, 232 N.E.2d 468; *Zak v. Fidelity-Phenix Insurance Co.* (1966), 34 Ill. 2d 438, 216 N.E.2d 113; *Rom v. Gephart* (1961), 30 Ill. App. 2d 199, 173 N.E.2d 828; *appeal denied* (1961), 21 Ill. 2d 622; *Insurance Co. of North America v. Federated Mutual Insurance Co.* (6th Cir. 1975), 518 F.2d 101; *Bankers Life & Casualty Co. v. Arizona Public Service Co.* (9th Cir. 1966), 365 F.2d 697; *Salerno v. Western Casualty & Surety Co.* (8th Cir. 1964), 336 F.2d 14; *Claverie v. American Casualty Co.* (4th Cir. 1935), 76 F.2d 570, *cert. denied* (1935), 296 U.S. 590, 80 L. Ed. 417, 56 S. Ct. 102; *Burns v. Consolidated American Insurance Co.* (Fla. App. 1978), 359 So. 2d 1203; *American Home Mutual Life Insurance Co. v. Harvey* (1959), 99 Ga. App. 582, 109 S.E.2d 322; *Old Equity Life Insurance Co. v. Jones* (Miss. 1969), 217 So. 2d 648; *Harr v. Allstate Insurance Co.* (1969), 54 N.J. 287, 255 A.2d 208; *Shichman v. Commercial Travelers Mutual Accident Association of America* (1944),

267 App. Div. 389, 46 N.Y.S.2d 32, *appeal denied* (1944), 267 App. Div. 906, 47 N.Y.S.2d 486; *Security Insurance Co. v. Greer* (Okla. 1968), 437 P.2d 243; *Crescent Co. v. Insurance Co. of North America* (1976), 266 S.C. 598, 225 S.E.2d 656; *Combined American Insurance Co. v. Parker* (Tex. Civ. App. 1964), 377 S.W.2d 213.) Moreover, it is also not true that a property insurance contract can never be created after the loss has occurred (4 Appleman, Insurance Law & Practice §2291 (1969)), or that an insurer cannot by acts occurring after the loss be held liable on a contract which did not actually exist at the time of the loss. See, for example, *Van Hulle v. State Farm Mutual Automobile Insurance Co.* (1968), 99 Ill. App. 2d 378, 241 N.E.2d 320, *aff'd* (1969), 44 Ill. 2d 227, 254 N.E.2d 457 (expiration of policy for nonpayment of premium).

■■ In any event, there was a contract in existence. Indeed if the insurer's contention that there was no contract was true, if the sale had terminated the contract as it did in *Truglio v. Zurich General Accident & Liability Insurance Co.* (1928), 247 N.Y. 423, 160 N.E. 774, relied upon by the defendant, then defendant was not justified in paying Fisher. The sole question was whether the assignment (also in existence at the time of the loss) was binding on the insurance company so as to permit the plaintiff to benefit from the policy's existence. The provision in the contract requiring the consent of the insurer before any assignment is enforceable against it serves a valid purpose in preventing the increase of risk without the insurer's knowledge and consent. (*University of Judaism v. Transamerica Insurance Co.* (1976), 61 Cal. App. 3d 937, 132 Cal. Rptr. 907; *National American Insurance Co. v. Jamison Agency, Inc.* (8th Cir. 1974), 501 F.2d 1125.) Thus such clause is generally held to be valid and binding on the alleged assignee who cannot recover absent such consent. (See *Pfeffer v. Farmers State Bank* (1931), 263 Ill. App. 360, *cert. denied*; 5A Appleman, Insurance Law & Practice §3425 (1970).) But since the clause is inserted in the policy solely for the benefit of the insurer, it can be waived by the insurer or the insurer can be estopped from relying on it and courts have frequently found an insurer barred from relying on the clause (5A Appleman, Insurance Law & Practice §3428 (1970): 17 Appleman, Insurance & Practice §§9677, 9678 (1945)), even by conduct occurring after the loss had occurred. *Harbour v. Reliable Insurance Co.* (1963), 94 Ariz. 344, 385 P.2d 220; *First of Georgia Insurance Co. v. Josey* (1973), 129 Ga. App. 14, 198 S.E.2d 381; and see *Borchers v. Barckers* (1911), 158 Mo. App. 267, 138 S.W. 555; *Pruitt v. Meyer* (1970), 2 Wash. App. 14, 467 P.2d 364.

## II

Since it is clear that the requirement that the insurer's consent to an assignment can be waived and the insurer can be estopped from relying on it, it is necessary to determine whether the trial court correctly ruled as

a matter of law that the insurer was not barred in this case from relying on the defense.

Estoppel refers to an abatement, raised by law, of rights and privileges of the insurer where it would be inequitable to permit their assertion; such relinquishment need not be voluntary, intended or desired by the insurer, but it necessarily requires some prejudicial reliance of the insured upon some act, conduct or non-action of the insurer. (*Florsheim v. Travelers Indemnity Co.* (1979), 75 Ill. App. 3d 298, 393 N.E.2d 1223; *Tibbs v. Great Central Insurance Co.* (1978), 57 Ill. App. 3d 866, 373 N.E.2d 492, *appeal denied* (1978), 71 Ill. 2d 606; *Old Mutual Casualty Co. v. Clark* (1977), 53 Ill. App. 3d 274, 368 N.E.2d 702; *DeGraw v. State Security Insurance Co.* (1976), 40 Ill. App. 3d 26, 351 N.E.2d 302, *appeal denied* (1976), 64 Ill. 2d 596; 16B Appleman, Insurance Law & Practice §9081 (1981).) Since the plaintiff does not contend and has never contended that it was somehow misled to its detriment by insurer's payment of Fisher's claim, it correctly has never contended that by the payment, the insurer became estopped from relying on the defense.

What plaintiff does contend and has contended throughout is that the insurer by paying Fisher waived the defense. Unlike estoppel, waiver is raised by the act of the insurer not by operation of law. It is consensual, and consists of the intentional relinquishment of a known right. (16B Appleman, Insurance Law & Practice §9081 (1981)); *Florsheim v. Travelers Indemnity Co.* (1979), 75 Ill. App. 3d 298, 393 N.E.2d 1223; *Tibbs v. Great Central Insurance Co.* (1978), 57 Ill. App. 3d 866, 373 N.E.2d 492, *appeal denied* (1978), 71 Ill. 2d 606; *Mollihan v. Stephany* (1977), 52 Ill. App. 3d 1034, 368 N.E.2d 465.) A waiver may be express or implied, arising from the acts, words, conduct, or knowledge of the insurer. (*Hartford Accident & Indemnity Co. v. D. F. Bast, Inc.* (1977), 56 Ill. App. 3d 960, 372 N.E.2d 829; *Mollihan v. Stephany* (1977), 52 Ill. App. 3d 1034, 368 N.E.2d 465.) It is essentially unilateral and is a legal consequence of the insurer's act or conduct so that no act of the insured is necessary to complete it (16B Appleman, Insurance Law & Practice §9084 (1981)); *Bowen v. Merchants Mut. Cas. Co.* (1954), 99 N.H. 107, 107 A.2d 379; *Liberty Mutual Insurance Co. v. Cleveland* (1968), 127 Vt. 99, 241 A.2d 60; *Buchanan v. Switzerland General Insurance Co.* (1969), 76 Wash. 2d 100, 455 P.2d 344); nor is prejudicial reliance by the insured required. *Allstate Insurance Co. v. National Tea Co.* (1975), 25 Ill. App. 3d 449, 323 N.E.2d 521, *appeal denied* (1975), 58 Ill. 2d 596; *Cox v. American Insurance Co.* (1913), 184 Ill. App. 419; *American Insurance Co. v. Nationwide Mutual Insurance Co.* (1970), 110 N.H. 192, 270 A.2d 907; *Great American Insurance Co. v. General Insurance Co. of America* (1970), 257 Or. 62, 475 P.2d 415; *Liberty Mutual Insurance Co. v. Cleveland* (1968), 127 Vt. 99, 241 A.2d 60; *Burr v. Lane* (1974), 10 Wash. App. 661, 517 P.2d 988.

It has been held that an insurer, which after the loss attempted to negotiate a settlement with the named insured knowing that the property had been sold and the policy assigned before the loss, waives the defense that its consent was not obtained to the assignment and admits its liability up to the limits of the policy. (*Harbour v. Reliable Insurance Co.* (1963), 94 Ariz. 344, 385 P.2d 220.) In *Harbour*, however, the named insured had transferred all of her interest in the property and had no insurable interest in it when the loss occurred. The insurer had no reason to negotiate a settlement unless the policy was still in existence at the time of the loss and since the seller had no insurable interest at that time, the policy could only be in existence if the purchaser's interest was insured by it. *Harbour* is inapplicable here since, unlike the named insurer in *Harbour*, Fisher continued to be insured under the contract after the sale of the policy and the insurer only paid her the amount it was required to pay her under the contract.

It is true that, as the plaintiff contends, the named insured in the insurance contract is Pullman Trust and Savings Bank as Trustee for Hazel Fisher. However insurance contracts must be read and construed as a whole (*Cobbins v. General Accident Fire & Life Assurance Corp.* (1972), 53 Ill. 2d 285, 290 N.E.2d 873; *Strauss v. Allstate Insurance Co.* (1978), 62 Ill. App. 3d 289, 378 N.E.2d 1308), and in case of ambiguity or any inconsistent or conflicting provisions, must be construed in favor of granting coverage to the insured. (*Reznick v. Home Insurance Co.* (1977), 45 Ill. App. 3d 1058, 360 N.E.2d 461; *Leakakos Construction Co. v. American Surety Co.* (1972), 8 Ill. App. 3d 842, 291 N.E.2d 176, *appeal denied* (1973), 53 Ill. 2d 606; *Iowa National Mutual Insurance Co. v. Fidelity & Casualty Co.* (1965), 62 Ill. App. 2d 297, 210 N.E.2d 622.) In light of the fact that while the trustee was said to be the named insured, the address given as that of the named insured was Fisher's address, it is clear that the parties to the contract understood that Fisher was in fact the party whose interest was to be protected by the contract and that the trustee was only named as the insured because it was early held in Illinois that when the legal title is in the trustee he is the only one who may insure it. *Fray v. National Fire Insurance Co. of Hartford* (1929), 255 Ill. App. 209, *aff'd on other grounds* (1929), 341 Ill. 431, 173 N.E. 479.

■■ It is well established that where the owner sells the insured property but retains a mortgage on it he may recover on the insurance since, while it is essential that he still have some type of insurable interest, it is not necessary that the interest be the same at the time of the loss as the time of effecting the insurance. (*Wriedt v. Beckenhauer* (1968), 183 Neb. 311, 159 N.W.2d 822; *Southwestern Graphite Co. v. Fidelity & Guaranty Insurance Corp.* (5th Cir. 1953), 201 F.2d 553; 4 Appleman, Insurance Law & Practice §2245 (1969).) It might have been better procedure for the

insurer to have paid the trustee on behalf of Hazel Fisher. Nevertheless in light of the fact that it was clearly the intention of both the insurer and Fisher that Fisher's interest be protected under the agreement we see no error in the insurer's having paid Fisher directly, particularly since the bank by its assignment had disclaimed all interest in the policy. (See 5A Appleman, Insurance Law & Practice §3337 (1970).) Furthermore, while not necessary to our decision, it would appear that the assignment to Fisher was valid. It has been held that the consent of the insurer to an assignment is not needed where the person to whom the assignment was made was the one who applied for and secured the insurance and paid the premiums, there being no increase of risk in such event. *Reynolds v. Canton Insurance Office, Ltd.* (1917), 98 Wash. 425, 167 P. 1115.

■■ Finally in light of the fact that the insurer paid Fisher because she held a mortgage on the property, its conduct in demanding an assignment of the mortgage was not inconsistent with its reliance on the consent requirement in the policy and did not waive that defense. *Florsheim v. Travelers Indemnity Co.* (1979), 75 Ill. App. 3d 298, 393 N.E.2d 1223.

### III

■■ Our conclusion that as a matter of law the insurer cannot be considered to have waived the consent provision in its policy does not mean however that under no circumstances can this plaintiff recover on the policy. As already noted the purpose of the consent requirement is to protect the insurer against an unbargained for increase of risk. While we are aware that earlier cases have enforced the consent clause and automatically denied recovery where the purchaser failed to obtain the insurer's consent to the assignment, we are persuaded by the more recent cases that we should not place form over substance and enforce a forfeiture on technical grounds. If in fact the breach of the policy provision does not increase the insurer's risk (*Imperial Enterprises, Inc. v. Fireman's Fund Insurance Co.* (5th Cir. 1976), 535 F.2d 287; *National American Insurance Co. v. Jamison Agency, Inc.* (8th Cir. 1974), 501 F.2d 1125), or if the insurer would have routinely approved the assignment had it been presented before loss (*University of Judaism v. Transamerica Insurance Co.* (1976), 61 Cal. App. 3d 937, 132 Cal Rptr. 907), the plaintiff may still recover on the policy for its own loss. As the California court stated in *University of Judaism*, 61 Cal. App. 3d 940-42, 132 Cal. Rptr. 909, 910:

> "In interpreting insurance contracts we must' give effect to the intentions of the parties and the reasonable expectations of the ordinary insured that the policy will be construed to fairly achieve its object of securing indemnity to the insured for the losses to which the insurance relates. * * * Forfeitures on technical grounds

which bear no substantial relationship to the insurer's risk are disfavored. * * *

* * *

In this case, had notice been promptly given prior to the loss, defendants would have routinely approved the assignment of the policy to plaintiff. There was no change in the nature of the activity carried on at the premises. There is no evidence that the change of ownership in any way increased the risk to defendants. Since the change of ownership did not increase the risk to defendants, and they would have routinely approved the assignment, they cannot claim they suffered any prejudice from the late notice. * * *

In effect defendants are asserting that even though they would have approved the assignment as a matter of course, they should have the arbitrary right to disapprove it when the only apparent reason for doing so that an intervening loss has occurred. The arbitrary refusal of consent in such circumstances would be inconsistent with the insurer's duty of good faith. (See *Gruenberg v. Aetna Ins. Co.*, 9 Cal.3d 566, 573, 575, [108 Cal. Rptr. 480, 510 P.2d 1032].)

The language of the provision is consistent with plaintiff's theory that defendants should be deemed to have consented to the assignment, and that such consent relates back to the time of the assignment. Unlike prior versions of the standard form, which stated that '. . . this entire policy should be void . . . if this policy be assigned before a loss,' the present provision merely states that assignment shall not be valid 'except with' the written consent of the company. To avoid a forfeiture, plaintiff may, in lieu of express approval, show that the assignment would have been routinely approved."

As we have repeatedly held, summary judgment can only be granted when there is no material issue of fact and it is clear that the movant is entitled to judgment. While the trial court properly determined that the insurer did not waive its right to rely on the clause, summary judgment was improper since there was no determination whether there was an increase of risk or whether the insurer would have approved the assignment had it been presented before loss. For these reasons, we reverse and remand the case for further proceedings in accord with this opinion.

Reversed and remanded.

JOHNSON and JIGANTI, JJ., concur.

## SUPPLEMENTAL OPINION ON DENIAL OF REHEARING

Mr. PRESIDING JUSTICE ROMITI delivered the opinion of the court:

■■ Royal Globe in its petition for rehearing has contended that this court has attempted to overrule the Illinois Supreme Court, citing *Immel v. Travelers Insurance Co.* (1940), 373 Ill. 256, 26 N.E.2d 114. In *Immel,* the court as *dictum* stated that the parties to a contract may agree that it may not be assigned and such a provision is valid. It further stated that an insurance company may provide that any policy can only be assigned on such terms as are therein provided and if such terms are not complied with, the assignment is invalid as against the company. But, since (1) this rule was conceded and not contested by the parties, (2) the claimant was claiming under a pledge not an assignment, and (3) the suit was for negligence, the statements are clearly *dictum* and not a holding of the case. The issue in *Immel* was whether the defendant, a life insurance company, was negligent in paying the proceeds to someone other than the plaintiff or in issuing a duplicate policy upon demand. The supreme court held that the policies were not negotiable, an insurer could issue duplicate policies for the convenience of the policyholder and the company could safely pay promptly to those shown by their own records to be entitled to payment. Any other result, the court pointed out, would defeat the public policy that life insurance be promptly paid. Unlike *Immel,* there is no attempt in this case to force the insurer to pay twice under the same policy. The sole issue is whether it can escape on a technicality any liability under a policy for which it received a premium even if there was no increase in the risk or the insurer would have routinely approved the assignment had there been no loss.

Petition for rehearing is denied.

JOHNSON and JIGANTI, JJ., concur.