LA SALLE NATIONAL BANK, Trustee, Plaintiff-Appellant, v. ALLSTATE INSURANCE COMPANY, Defendant-Appellee.

First District (1st Division)   No. 86—2805

Opinion filed December 14, 1987.—Rehearing denied March 3, 1988.

Rabens, Formusa & Glassman, Ltd., of Chicago (Marvin Glassman, of counsel), for appellant.

Condon, Cook & Roche, of Chicago (Francis J. Leyhane III and Vincent P. Cook, of counsel), for appellee.

JUSTICE BUCKLEY delivered the opinion of the court:

This appeal arises out of a declaratory judgment action brought by plaintiff to determine whether it, as successor trustee to a land trust, is entitled to coverage for damage to property under an insurance policy issued by defendant. The circuit court granted summary judgment for defendant while denying plaintiff's motion for summary judgment. For the reasons set forth below, we reverse and remand for a determination whether the transfer of the trust to plaintiff increased the insured's risk.

The following facts are undisputed. On January 4, 1981, Susie Lenorr Edmonds obtained a policy from defendant, Allstate Insurance Company, insuring a building located at 3511 West Adams in Chicago for loss and damage by fire, among other risks. Four days later, Ms. Edmonds conveyed legal title to the property to Exchange

National Bank (Exchange National) pursuant to trust No. 38654.

On August 14, 1981, Ms. Edmonds sent defendant a letter and an assignment of insurance form notifying defendant of the transfer to Exchange National, requesting its consent to such transfer, and naming herself as beneficiary of the trust. Defendant failed to sign the form, but it nevertheless renewed Ms. Edmonds' policy annually and continued to collect premiums for five years. Some time following this notification, Ms. Edmonds conveyed her beneficial interest in the trust to another individual while legal title remained in Exchange National. Subsequent to this conveyance, plaintiff, La Salle National Bank, became successor trustee of the property under trust No. 10-38654-09.

On January 17, 1986, the building in question was damaged by fire. Defendant denied any liability to plaintiff on the ground that no valid assignment of the subject policy was ever made to Exchange National, plaintiff, or the current beneficiary. Both parties moved for summary judgment, and the trial court, relying primarily on *Founders Mutual Casualty Co. v. Mark* (1973), 14 Ill. App. 3d 204, 302 N.E.2d 142, granted defendant's motion but denied plaintiff's. It is from these rulings that plaintiff appeals.

Plaintiff initially contends that defendant is estopped from raising the defense of nonconsent to the initial transfer to Exchange National as trustee since defendant, by renewing the policy annually and collecting insurance premiums until the fire, impliedly assented to the transfer. Further, defendant admitted to receipt of the notification of title transfer and of the request to assign the policy. According to plaintiff, these actions constitute "classic estoppel." We agree.

Estoppel involves an abatement, raised by law, of rights and privileges of the insurer where it would be inequitable to permit their assertion; such relinquishment need not be voluntary, intended or desired by the insurer, but it requires some prejudicial reliance of the insured upon some act, conduct or nonaction of the insurer. (*National Discount Shoes, Inc. v. Royal Globe Insurance Co.* (1981), 99 Ill. App. 3d 54, 424 N.E.2d 1166.) The concept of estoppel is further delineated in Couch on Insurance (18 G. Couch, Insurance §71:24, at 245 (2d ed. 1983)), as follows:

> "When the insured relies on the insurer's recognition of the continued existence of the policy, the case presents both a waiver and an estoppel. Thus it has been held that where, after the breach of a condition in a policy, the insurer, with knowledge of the facts constituting the breach, by its conduct,

leads the insured to believe that it still recognizes the validity of the policy and considers him protected by it, and induces him, under such impression, to incur expense, it will be deemed to have waived the forfeiture, and will be estopped from setting it up as a defense."

■ Applying these equitable principles to the instant case, we conclude that defendant is estopped from asserting its nonconsent to the assignment to Exchange National as a defense to this action. Defendant was fully apprised of the title transfer to Exchange National approximately five years prior to the damage in question and, subsequent to this notification, continued to renew the policy and retain premiums. Defendant's failure to expressly reject the title transfer, yet continue to collect premiums, would lead a reasonable person to believe that the policy was in full force and effect providing the protection for which it was purchased.

In this regard, *National Discount Shoes, Inc. v. Royal Globe Insurance Co.* (1981), 99 Ill. App. 3d 54, 424 N.E.2d 1166, is applicable. In that case, the plaintiff purchased property and obtained an assignment of an insurance policy covering the property from the vendor, but failed to obtain the insurance company's consent to the assignment. After the property was destroyed by fire, the insurer paid the vendor the amount of the mortgage but refused to pay the plaintiff the amount of its loss. While the court held that, as a matter of law, the insurer did not waive the consent provision in its policy, it nevertheless remanded the case for a determination whether there was an increase of risk or whether the insurer would have approved the assignment had it been presented before the loss. In so doing, the court stated:

> "As already noted the purpose of the consent requirement is to protect the insurer against an unbargained for increase of risk. While we are aware that earlier cases have enforced the consent clause and automatically denied recovery where the purchaser failed to obtain the insurer's consent to the assignment, we are persuaded by the more recent cases that we should not place form over substance and enforce a forfeiture on technical grounds. If in fact the breach of the policy provision does not increase the insurer's risk [citations], or if the insurer would have routinely approved the assignment had it been presented before loss [citation], the plaintiff may still recover on the policy for its own loss." 99 Ill. App. 3d at 61, 424 N.E.2d at 1171-72.

In support of its position, the *National Discount* court relied on

the California Appellate Court's decision in *University of Judaism v. Transamerica Insurance Co.* (1976), 61 Cal. App. 3d 937, 132 Cal. Rptr. 907. The *Judaism* court, after recognizing that an insurance contract must be construed to "give effect to the intentions of the parties" and "to fairly achieve its object of securing indemnity to the insured" (61 Cal. App. 3d at 940-41, 132 Cal. Rptr. at 909), stated:

> "In this case, had notice been promptly given prior to the loss, defendants would have routinely approved the assignment of the policy to plaintiff. There was no change in the nature of the activity carried on at the premises. There is no evidence that the change of ownership in any way increased the risk to defendants. Since the change of ownership did not increase the risk to defendants, and they would have routinely approved the assignment, they cannot claim they suffered any prejudice from the late notice. ***
>
> In effect defendants are asserting that even though they would have approved the assignment as a matter of course, they should have the arbitrary right to disapprove it when the only apparent reason for doing so is that an intervening loss has occurred. The arbitrary refusal of consent in such circumstances would be inconsistent with the insurer's duty of good faith. [Citations.]" (61 Cal. App. 3d at 942, 132 Cal. Rptr. at 909-10.)

Similarly, here, we refuse to allow defendant to escape liability on a mere technicality under the subject policy for which it received premiums, unless it can be shown that there was an increase in risk to defendant or defendant would not have routinely approved the assignment to plaintiff. To hold otherwise would permit defendant to "arbitrarily" deny consent to the assignment, thus negating any implied duty of good faith.

Defendant attempts to distinguish *National Discount Shoes, Inc.* on the ground that there a request was made for the insurer's consent, whereas here, no such request was made with respect to plaintiff. In this case, however, plaintiff automatically became successor trustee to all of Exchange National's land trusts as it went out of the business. Arguably, if defendant would have expressly consented to or rejected the initial transfer to Exchange National, plaintiff would have been put on notice that the second transfer to plaintiff also required express consent.

Equally unpersuasive is defendant's and the trial court's reliance on *Founders Mutual Casualty Co. v. Mark* (1973), 14 Ill. App. 3d 204, 302 N.E.2d 142. *Founders Mutual* involved a declaratory action

brought by a liability insurer seeking a declaration that it had no duty to defend or indemnify a claim presented by the beneficiaries of a land trust under an owners, landlord and tenant policy issued by Founders Mutual. The insured under that policy was La Salle National Bank, individually and as trustee. The property was later placed in a new trust with the Chicago City Bank and Trust Company as trustee. Given that the assignment of legal title and interest in the insured property was made to Chicago City Bank without notice to Founders Mutual and without its consent, the court held that Founders Mutual owed no duty to the beneficiaries.

Clearly, in the instant case, if defendant had not been notified of the change in title to Exchange National and no request for assignment had been made, *Founders Mutual* would be applicable. Yet, it is this precise notice and request and defendant's nonaction in response thereto which forms the basis for the estoppel asserted by plaintiff and therefore distinguishes the present facts from *Founders Mutual*.

Defendant additionally argued in the trial court that the change in beneficiary under the trust precludes plaintiff's recovery. Defendant, however, conceded in oral argument and in its brief that there is no provision in the subject policy requiring such notification. Moreover, there is nothing in the record to support defendant's position that it was misled to believe that Ms. Edmonds would continue to be the beneficiary under the trust.

For the foregoing reasons, we reverse and remand the cause for further proceedings in accord with this opinion.

Reversed and remanded.

QUINLAN, P.J., and O'CONNOR, J., concur.