641 So.2d 909 (1994)
John MUNSHOWER, Appellant,
v.
Frank MARTIN, Appellee.
No. 94-202.
District Court of Appeal of Florida, Third District.
July 12, 1994.
Rehearing Denied September 14, 1994.
Wallace, Engels, Pertnoy, Solowsky & Allen and Michael G. Shannon and Milton Wallace, Miami, for appellant.
Mark H. Gregg, Tavernier, for appellee.
Before SCHWARTZ, C.J., and NESBITT and BASKIN, JJ.
NESBITT, Judge.
Frank Martin agreed to sell John Munshower a house located in Port Largo, Florida for $257,500. Within weeks of the parties' signing of the purchase and sale agreement, Hurricane Andrew hit South Florida. After inspecting the house for damage, the buyer discovered that the roof was damaged. The buyer wanted the roof fixed. With the out-of-town seller's authorization, the buyer contacted the seller's insurance company and met with an insurance adjuster at the property. After considering the damage done, the insurance company issued a check for $17,000 to the seller. Thereafter, a dispute arose over the proper disposition of the check, each party claiming a right to the funds. The buyer considered the seller's claim of entitlement to the funds a breach of contract and refused to close. The seller then declared the buyer in default.
*910 The buyer brought the instant action, alleging his entitlement to specific performance of the purchase and sales agreement, a declaration that he was entitled to the insurance proceeds under the agreement, the reasonable value of the materials he purchased and services he provided to repair the house, and damages for breach of the oral lease, which had permitted the buyer to move into the house prior to closing.
The trial judge ordered that the buyer be awarded some $6,000 in quantum meruit recovery for repairs the buyer had made while occupying the home prior to closing, and this award is not being appealed. The trial judge, however, also concluded that the agreement's paragraph 6, addressing "ROOF INSPECTION" controlled the claim for specific performance, and under that paragraph, ordered that the seller had the option of cancelling the contract.
We conclude that the trial court properly looked to the purchase and sale agreement for the rights and obligations of the parties; however, the trial court relied on the wrong section of that agreement in determining whether the buyer was entitled to specific performance.
Paragraph 6 provides:
ROOF INSPECTION: Prior to closing, at Buyers expense, Buyer shall have the right to obtain a written report from a licensed roofer stating that the roof is in a water tight condition. In the event repairs are required to either correct the leaks or to replace damage to facie or soffit, Seller shall pay for said repairs which shall be performed by a licensed roof contractor. However, if the costs of such repairs exceeds two percent (2%) of the purchase price, Buyer may elect to pay such costs. If Buyer elects not to pay, Seller may pay the excess or cancel the contract.
However, paragraph 3 provides:
3. CONDITION OF PROPERTY: The property herein is sold "as is" unless otherwise specified on the face hereof. The risk of loss or damage to said premises by fire or other cause until closing, is assumed by the seller. (emphasis added.)
The buyer argues that the roof inspection clause did not apply to the instant casualty loss so as to permit the seller to cancel the contract, because casualty damages were specifically provided for by paragraph 3. We agree. The casualty loss provision contemplated damage to the premises by "fire or other cause" and it is this clause, wherein the seller expressly assumed this risk, which controls. See World Exhibit Corp. v. City Bank Farmers Trust Co., 270 A.D. 654, 61 N.Y.S.2d 889 (Finding specific language relating to a fire loss took precedence over other general language in contract.), affirmed, 296 N.Y. 586, 68 N.E.2d 876 (1946).
Here, the seller claimed that a post-hurricane inspection revealed roof damage of approximately $1,000. The buyer, relying on the insurance adjuster's inspection of the property, claimed entitlement to either repair by replacement of the roof or receipt of the $17,000 insurance check which had been issued. The trial judge, concluding that the seller was not obligated to proceed with the sale, made no determination as to the extent of the roof damage caused by the hurricane. Under the express provisions of paragraph 3, a determination should be made as to the damage done by the hurricane and the seller should be held responsible for the roof's repair or payment to the buyers of the sum the trial court concludes is necessary for repair. See McNeill v. McNeill, 135 So.2d 785 (Fla. 1st DCA 1961).
The function of the doctrine of equitable conversion is to "regard as done that which ought to be done" in order to protect a party's interest in real property or its proceeds. Arko Enterprises, Inc. v. Wood, 185 So.2d 734 (Fla. 1st DCA 1966). Thus, absent a contract provision, we have held, the purchaser bears the loss stemming from damage to the property and is generally entitled to benefits of insurance proceeds. Weise v. Kizer, 435 So.2d 381, 383 (Fla. 5th DCA 1983), review denied, 444 So.2d 417 (Fla. 1984). However, it is clear, "the parties can agree to shift that risk back onto the seller." Boyer, Florida Real Estate Transactions, Vol. I § 4.26 (1994). Consequently, the insurance proceeds became the property of the *911 seller. But the corollary is that the seller must indemnify the buyer for the actual loss caused by the casualty.
Here, the seller expressly assumed the risk of loss until closing. Furthermore, the contract in no way allocated potential insurance proceeds. Also, the seller did not negotiate with the insurance adjuster for the amount actually procured, action which might tend to demonstrate the seller's endorsement of that sum as a proper reflection of the damage for which the buyer was due compensation. Cf. Pruitt v. Meyer, 2 Wash. App. 14, 467 P.2d 364 (1970) (Seller having negotiated with insurer the settlement for the actual cash value of building destroyed could not be permitted to declare the loss occasioned by the fire was less than the amount of that settlement.) In the instant case, the value to be attached to the damage done remains to be determined on remand.
In sum, the order in the seller's favor is reversed. On remand, the trial judge is instructed to specifically enforce the purchase and sale agreement including the sellers' promise under paragraph 3, to assume the risk of loss. Further, on remand, the court is to consider the buyer's claim for damages resulting from breach of the parties' oral lease. The trial court will have the discretion to deduct the sum determined from the purchase price or set off this sum from the amount of cash to close.
Reversed and remanded.